222 N.J. Super. 191 (1988)
536 A.2d 319
REGINA M. GRANT, PLAINTIFF-RESPONDENT,
v.
SAMUEL L. WRIGHT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1987.
Decided January 22, 1988.
*193 Before Judges PETRELLA, DREIER and ASHBEY.
Ferro and Ferro, attorneys for appellant (Ralph A. Ferro, on the brief).
Powers & November, attorneys for respondent (Mitchell I. Steinhart, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
On June 3, 1986, plaintiff Regina Grant filed a complaint pursuant to the Prevention of Domestic Violence Act (N.J.S.A. 2C:25-1 et seq.) in the Chancery Division, Family Part, against defendant Samuel Wright. In her complaint she sought a restraining order and exclusive possession of the parties' residence because of defendant's asserted harassments of her on May 26 and June 1, 1986. The court took testimony, and an ex parte order was entered forbidding defendant from returning to the scene, prohibiting defendant from having contact with *194 plaintiff and granting plaintiff temporary exclusive possession of their joint residence.
By order dated July 15, 1986, defendant's motion to dismiss the complaint was denied and the restraining order was made permanent. Defendant was given permission to remove his furniture and personal property from the premises and his motion for a stay was denied. Defendant appeals and we reverse.
On appeal from the July 15, 1986 order defendant contends:
I. The court erred in finding that defendant's conduct constituted harassment.
II. The court erred in awarding possession of the apartment to plaintiff, who had not been a party to a lease with the landlord.
III. The statute proscribing harassment is unconstitutionally vague.
IV. The Prevention of Domestic Violence Act is unconstitutional for permitting the ex parte removal of the legal occupier of premises prior to a hearing.
At trial the following facts were adduced. Sometime in September of 1984 plaintiff moved into defendant's apartment. They talked of buying a condominium but defendant expressed opposition to marrying plaintiff because she wanted children and he did not. In November of 1985, after discussions by both parties with the landlord, he agreed to lease another apartment on a month-to-month basis. There was no written lease, although defendant had been a tenant of the prior apartment for some years.
Plaintiff testified that the relationship started deteriorating in February 1986. In the beginning of May 1986, she started to hemorrhage and called her doctor. She also told defendant that she was pregnant. Her doctor advised her to go to the hospital. Defendant made no effort to assist her. Apparently the parties did not again discuss plaintiff's pregnancy until May 26, 1986. Defendant testified, however, that the knowledge of plaintiff's pregnancy bothered him, and plaintiff testified that defendant had violent outbursts, had thrown things and had slammed doors, but she was not specific as to when.
*195 The parties' testimony essentially agreed that on May 26, 1986, an incident began when plaintiff asked if defendant was concerned about the results of her sonogram and he said that he was not. Plaintiff said that he should be, because he would have to support the child. Defendant said she would have to prove that the child was his and that he would have her thrown out of the apartment. At this point plaintiff retreated to a little bedroom. Defendant followed. Both were yelling and he "slapped" the door. Plaintiff testified that she was afraid and that she "jumped back." Defendant proceeded into the room, telling her that he would not hurt her.[1] He then left the apartment, "slamming" the door.
Defendant, knowing that he was going on vacation, contacted six friends and made arrangements to have them assist him in disposing of plaintiff's belongings on the weekend of June 1, 1986, while plaintiff was visiting her family. He put them in storage in his and her names, after telling her that he would be playing golf that day. He then called plaintiff's brother-in-law and told him that he would be unreachable but that the storage ticket was in plaintiff's car where he had put some of plaintiff's possessions while she was inside her brother-in-law's house. Defendant testified that he took these surreptitious steps in order to prevent plaintiff from putting him out while he was away on vacation and in full knowledge that the action would make her angry and upset. Because she was unable to get her clothes, plaintiff testified that she missed a day of work.
Defendant first contests the judge's conclusion that his conduct on either May 26 or June 1 constituted harassment as defined in N.J.S.A. 2C:33-4 and incorporated in the definition of acts of domestic violence described in N.J.S.A. 2C:25-3b(10). Plaintiff's complaint did not specify the section of N.J.S.A. 2C:33-4 upon which she relied. The full statute provides:

*196 A person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.
It is clear to us that the court relied upon N.J.S.A. 2C:33-4c at the June 24, 1986 hearing. Defendant asserts, however, that the evidence there presented could not justify a finding of either a course of alarming conduct or repeated acts designed to alarm and we are constrained to agree. The judge relied primarily on defendant's conduct on June 1. He found that defendant's planned removal of plaintiff's belongings, putting them into storage and into her car constituted harassment because defendant's purpose was to upset and annoy plaintiff. Such a purpose to harass, however, is not sufficient to satisfy the definition upon which the court relied. Moreover, the court did not consider certain relevant factors. The Prevention of Domestic Violence Act requires that:
a. A hearing shall be held in juvenile and domestic relations court[2] within 10 days of the filing of a complaint.... At the hearing the standard for proving the allegations in the complaint shall be by a preponderance of the evidence. The court shall consider but not be limited to the following factors:
(1) The previous history of domestic violence between the cohabitants including threats, harassment and physical abuse;
(2) The existence of immediate danger to person or property.... [N.J.S.A. 2C:25-13a].
We thus conclude that the judge's factual findings did not justify the July 15, 1986 order appealed from and that it must *197 be reversed.[3]
Defendant also appeals from the June 3, 1986 ex parte restraining order. In that connection defendant raises several constitutional challenges to the Act. He first urges that the inclusion of "harassment" in the Prevention of Domestic Violence Act makes the Act unconstitutionally overbroad and vague because the Act "reaches heated intimate discussions between persons who intend no harm to each other but who may be highly emotional at the moment and need to vent their anger and frustration in a nonharmful verbal manner." See State v. Lashinsky, 81 N.J. 1, 16 (1979); State v. Profaci, 56 N.J. 346, 350 (1970) and because "a person is not put on notice ... that his normal conversation during an argument could be grounds for being barred on from his own home."
Whether or not such claims could be made under other circumstances, we are satisfied that we need not consider them here because no such adjudication was either made or sought.[4]See Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973). Constitutional questions should not be addressed unless they are imperative for the *198 disposition of the litigation. State v. Salerno, 27 N.J. 289, 296 (1958).[5]
Defendant's primary argument is that, by enabling the court ex parte to restrain him from entering his residence, the Prevention of Domestic Violence Act deprived him of due process. Defendant concedes that when considering a constitutional due process right, the process which is due depends on the particular circumstances. See Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 565 n. 4 (1979). We agree with defendant that removal from his residence implicated a deprivation of a protected right.[6] As a fundamental component of procedural due process, therefore, he was entitled to "adequate notice, opportunity for a fair hearing and availability of appropriate review." Community Affairs Dept. v. Wertheimer, 177 N.J. Super. 595, 599 (App.Div. 1980). At issue is the authority of the judge to grant
... possession to the plaintiff of the residence to the exclusion of the defendant when the residence or household is jointly owned or leased by the parties provided that this issue has not been resolved nor is being litigated between the parties in another action. The court may amend its order at any time upon petition by either party [N.J.S.A. 2C:25-13b(2)].
Defendant's claim must be judged in the light of legislative history of the Prevention of Domestic Violence Act, the seriousness of the problem of family violence and the legislatively defined need for extraordinary process.
The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or *199 cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spouse abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide [Legislative findings and declarations, N.J.S.A. 2C:25-2].[7]
Our review of the statute persuades us that, given the nature of the problem, careful attention was (and continues to be) given by the Legislature to balancing the rights of defendants with the rights of victims.[8] Under the Act temporary ex parte restraining orders may be granted only if it appears that the plaintiff is in danger of domestic violence. N.J.S.A. 2C:25-14b.[9]
Any such temporary order is subject to dissolution or modification on 24 hours' notice or is immediately appealable for a plenary hearing de novo before a judge of the Family Part (as well as subject to a mandatory hearing within 10 days) N.J.S.A. 2C:25-14c; N.J.S.A. 2C:25-13a.[10]
At the June 3, 1986 ex parte hearing, the court found that defendant's actions placed plaintiff "in fear of [her] physical well-being." That finding was supported by plaintiff's testimony and comported with N.J.S.A. 2C:33-4b, that defendant harassed plaintiff by threatening to subject her "to striking ... or other offensive touching." See State v. Berka, 211 N.J. Super. 717, 721 (Law Div. 1986).
*200 We recognize that at the June 3 emergency hearing the judge did not find that plaintiff was in any kind of immediate danger (N.J.S.A. 2C:25-13a). We also note that his finding of past harassment was not a finding that plaintiff was in danger of domestic violence, a statutory requisite for an ex parte restraining order. N.J.S.A. 2C:25-14b. We have concluded that the final order lacked foundation and must be reversed, although there was little difference in the evidence proffered by plaintiff at the ex parte June 3 hearing and at the plenary June 24, 1986 hearing. We are nonetheless reluctant to reverse the ex parte order. Such protective orders are entered, often in the middle of the night and by definition in emergency circumstances.[11] Given the court's finding that plaintiff had been in fear, it was a natural, although unstated, judicial conclusion that defendant would react violently and to plaintiff's detriment upon learning of any court order she had obtained. Accepting that predicate, we are even more reluctant to hold that the court's initial discretion to issue the restraining order and to return plaintiff to the parties' residence was improperly exercised. The immediate response of an emergency judge is entitled to our respect in such high risk situations. See In re J.P., 198 N.J. Super. 166, 173 (App.Div. 1985). We merely emphasize that an emergency *201 order under the Act depends upon a finding that plaintiff is in danger of domestic violence.[12]
By this opinion we do not mean to foreclose plaintiff from pursuing other legal remedies against defendant in another Family Part proceeding.[13] The Prevention of Domestic Violence Act, however, was never intended to provide a jurisdictional basis for property disputes unsupported by the jurisdictionally required fact finding, and unrelated to its purpose.
Reversed.
NOTES
[1] Plaintiff's trial brief recites that she is 5'1" and defendant is 6'1", that he weighed 240 lbs. and she weighed 125 lbs. This difference in size was emphasized in plaintiff's June 3, 1986 testimony.
[2] We recognize that Assembly Committee substitute for Assembly Nos. 1968, 1785, 1389 and 1969 was recently enacted (L. 1987, c. 356). It appropriately identifies the court as "The Family Part of the Chancery Division of the Superior Court."
[3] While evidence concerning door "slapping," and "slamming," violent outbursts, reference to having plaintiff thrown out, defendant's throwing things, along with plaintiff's fear, might have supported a finding of a "course of alarming conduct," after hearing all of the evidence, the trial judge did not so find. In contrast, see infra, concerning the judge's earlier findings. In neither hearing did the judge find "the existence of immediate danger to person or property." N.J.S.A. 2C:25-13a(2).
[4] This argument presupposes a Prevention of Domestic Violence Act restraining order based upon acts which would be a violation of N.J.S.A. 2C:33-4a, which deals with harassing communications. Defendant was not charged with any conduct based on speech. We would note, of course, that certain types of speech are not entitled to constitutional protections. See State v. Profaci, supra, 56 N.J. at 351-352, citing Chaplinsky v. New Hampshire, 315 U.S. 568, 571-572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942); cf. State v. Finance American Corp., 182 N.J. Super. 33, 38 (App.Div. 1981).
[5] As originally enacted, the Prevention of Domestic Violence Act, L. 1981, c. 426, did not define "harassment" (N.J.S.A. 2C:33-4) as an act between cohabitants which constituted "domestic violence." That addition was brought about by subsequent legislative amendment. (See L. 1982, c. 82).
[6] We reject, however, defendant's argument based upon his claim to exclusive possession of the new apartment. While we do not pass upon defendant's ultimate entitlement to possession of the residence, its award to plaintiff was supported by defendant himself who testified that when they moved into the apartment, the landlord said that "the apartment was ours."
[7] See the following references in legislative history: New Jersey Commission on Sex Discrimination, Sex Discrimination in Marriage and Family Law, second report, (1981); New Jersey Advisory Commission to the United States Commission on Civil Rights, Battered Women in New Jersey (1981).
[8] On November 23, 1987, the Legislature passed Assembly Committee substitute for Assembly Nos. 1968, 1785, 1389 and 1969, concerning powers of arrest, modification of outstanding orders, and enforcement proceedings. As previously noted, these bills were enacted on January 5, 1988 (L. 1987, c. 356).
[9] N.J.S.A. 2C:25-13c also respecting an emergency complaint to restrain and eject defendant without a hearing clearly requires no less.
[10] Defendant appears not to have invoked this right.
[11] The Legislature particularly allocated the blame for the inadequacy of prior law to the "system's inability to generate a prompt response in an emergency situation," N.J.S.A. 2C:25-2; (Legislative findings and declarations, supra). Following the passage of chapter 426 of the Laws of 1981, continual monitoring of the Act and amendments was and still is the topic of many responsible agencies. See Working Group on the Enforcement of the Prevention of Domestic Violence Act, Report (June 1, 1984). Concerned groups include prosecutors; sheriffs; State Police; local police; court representatives; State departments of Human Services, Education, Criminal Justice, Division on Women; New Jersey Coalition for Battered Women; victim/witness associations, and shelter personnel. This list is by no means exhaustive. Without exception, it has been the position of concerned groups that courts historically have not responded appropriately to family violence emergencies. See also Finesmith, "Police Response to Battered Women: Critique and Proposals for Reform", 14 Seton Hall L.Rev. 74 (1983).
[12] See Memorandum from Chief Justice Wilentz to assignment judges (Feb. 11, 1986) (concerning the issuance of in-house restraining orders), reprinted at Supreme Court Family Division Practice Committee, Annual Report (1986-1987).
[13] Plaintiff's request for exclusive possession of the residence, given the circumstances, could represent a request for her share of the parties' joint venture. See Kozlowski v. Kozlowski, 80 N.J. 378, 383 (1979). As noted in Justice Pashman's concurring opinion in that case, the fact that the parties were unmarried does not prevent the courts from having to determine the intent of the parties concerning the financial result of a dissolution of such a relationship. Id. at 390. See also N.J.S.A. 9:17-53. If paternity is adjudicated, the father may be ordered to pay for the reasonable expenses of the mother's pregnancy and postpartum disability as well as for child support.