241 N.J. Super. 567 (1990)
575 A.2d 883
E.K., PLAINTIFF-RESPONDENT,
v.
G.K., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 1990.
Decided June 15, 1990.
*568 Before Judges PRESSLER, LONG and LANDAU.
Barry D. Berman, attorney for appellant and on the brief.
Fleming, Merrill & Roth, attorneys for respondent (Cathy Fleming on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by defendant G.K. from a judgment entered by the Chancery Division, Family Part, in an action brought by her husband E.K. invoking jurisdiction under N.J.S.A. 2C:25-1 to 25-16, the Prevention of Domestic Violence Act.
The K.s were married in 1977. It was a troubled alliance.
In 1986 they mutually agreed to adopt a young Polish boy and he was warmly received by G.K. The K. marriage was severely strained, however, when they returned to Poland to choose a second child for adoption. G.K. was extremely reluctant to accept and adopt K.K., a young girl later described by a court appointed psychologist to have "certain cognitive, social, and physical development delay." K.K. was adopted, however, because of E.K.'s concededly adamant insistence.
The marital problems of the K.s, and the reciprocal absence of affinity between G.K. and K.K. evident from the time of their first meeting, were conditions which aggravated and fed upon each other.
In January 1989, an evidential hearing was held on E.K.'s domestic violence charges. The evidence included a report and recommendation by an independent psychologist designated by the court, a DYFS report and recommendations, and testimony by the parties and a DYFS representative. It is not necessary to review in detail all of the evidence. It suffices to note that *569 as in most cases of chronic marital discord, causation was not a one-sided issue. Indeed, there had been some history of involvement by the parties in psychotherapy since 1983.
At the outset, it is critical to note that this appeal does not address an action for custody of children, See R. 5:8-1, et seq., or an action by the Division of Youth and Family Services, or custody issues under a matrimonial action for divorce, nullity or separate maintenance. Indeed, the record makes it clear that the Division of Youth and Family Services has been actively monitoring the treatment of the children, because of complaints filed by E.K. Moreover, it appears that there is pending a divorce action initiated by G.K. in which she seeks custody of the children.
At issue on this appeal is the narrow question of whether it was proper for the trial judge to enter an order under the Prevention of Domestic Violence Act which derived its jurisdiction only from E.K.'s contention that "harassment" within the meaning of N.J.S.A. 2C:25-3b(10) was established under the following theory of his complaint:
Plaintiff expressed his view towards discipline for the children of the marriage to the defendant, however, despite this, the defendant continued to discipline the children in the same manner causing harassment to the plaintiff. This coupled with the marital difficulties, DYFS involvement and an injury to the child constitutes domestic violence and requires the need for a Restraining Order in this matter.
G.K. has conceded that she lost her temper and acted violently towards K.K. on one occasion. G.K. has, however, denied any other purposeful acts of violence toward the child. Indeed, the trial judge found that a head injury suffered by K.K. during the admitted incident was accidental and unanticipated. K.K. had been shaken by G.K. while in the kitchen, and struck her head on the corner of a kitchen cabinet during the incident. Several other suspicious incidents, notably a slight burn from a hair dryer after a hair wash and a slight scald during bathing, were explained as accidents.
*570 N.J.S.A. 2C:25-3b defines domestic violence as "the occurrence of one or more acts between cohabitants," including: "(10) Harassment ... N.J.S.A. 2C:33-4." Nine other acts of violence are also listed under N.J.S.A. 2C:25-3b. Each is defined, as is harassment, by reference to the Code of Criminal Justice section applicable to the particular offense. So, for example, kidnapping as defined in N.J.S.A. 2C:13-1 is an act of domestic violence if committed between cohabitants.
N.J.S.A. 2C:33-4 defines harassment as follows:
A person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
Thus, integral to a finding of harassment under N.J.S.A. 2C:25-3b(10) is establishment of the element of purpose to harass.
The Prevention of Domestic Violence statute has been made part of the Code of Criminal Justice. It is not necessary for us to consider whether a criminal standard of proof should therefore have been applied in the instant case. We hold that, by any standard of proof, the record before the trial judge does not furnish a basis for a finding that the requisite element of purposeful harassment of E.K. by G.K. was established by her actions towards K.K. Indeed, the order of the trial judge which was otherwise carefully crafted does not so find. As we understand it, E.K.'s theory of harassment rests upon the adverse impact suffered by him as a result of G.K.'s persistence upon methods of discipline with which he differed.
Even assuming that the trial judge were to have found that G.K. purposely harmed K.K., a finding not easily discerned in the court's order, this would be inadequate to establish the requisite element of purpose to harass E.K. thereby.
*571 A psychological theory might support the explanation that G.K.'s feelings of hostility to K.K. were subconsciously caused by transference of her hostility to E.K. This, however, does not rise to a showing of purposeful harassment of E.K. under N.J.S.A. 2C:33-4. It is not enough that E.K. felt emotionally abused. The statute requires that G.K. be found to have injured the child in order to harass E.K. This was not found. Neither do we read the record as adequate to support such a finding.
Further, nothing in the statutory history or legislative findings set forth in N.J.S.A. 2C:25-2 suggests that the statute was intended to be read so broadly.
Here, DYFS was monitoring the case. It made no efforts to secure a custodial change. As above noted, a matrimonial case is now pending. The issue of K.K.'s custody and abuse, and of her brother's custody, can thus be squarely addressed. R. 5:8-1, et seq., N.J.S.A. 9:6-8.21, et seq., or even N.J.S.A. 9:6-1, et seq., furnish opportunities for direct consideration of the best interests of each of the children. The question of custody involves substantial issues concerning the best interests of both children of this marriage. We do not believe that the interests of either child can properly be served by basing custody determinations, as here, on the collateral question of whether strict treatment of a child constitutes an act of spousal abuse. Moreover, as we have found, the record in this case does not support a determination that any actions towards K.K. were purposely directed at harassment of E.K.
Accordingly, we reverse the judgment below. We direct, however, that the existing custodial and visitation order be continued for a period of twenty (20) days following receipt of this opinion, in order to provide to the parties opportunity for appropriate applications within the framework of the matrimonial action.