253 N.J. Super. 418 (1992)
601 A.2d 1201
DONNA ROE, PLAINTIFF-RESPONDENT,
v.
RICHARD ROE,[1] DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1991.
Decided January 31, 1992.
*420 Before Judges KING, GRUCCIO and BROCHIN.
Wilentz, Goldman & Spitzer, attorneys for appellant (David M. Wildstein, of counsel; Noel S. Tonneman, on the brief).
Rudnick, Addonizio & Pappa, attorneys for respondent (James J. Addonizio, of counsel; Thomas M. Comer, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal from a March 25, 1991 adjudication of domestic violence under the now-repealed original Prevention of *421 Domestic Violence Act, N.J.S.A. 2C:25-1 to 2C:25-16 (the Act); L. 1981, c. 426. The Act has been repealed and replaced by the Prevention of Domestic Violence Act of 1990, L. 1991, c. 261, § 20, effective November 15, 1991. Defendant-appellant Richard Roe (Richard) contends that the Family Court judge committed the following errors by ruling that: (1) he committed an act of domestic violence; (2) testimony of prior acts between the parties were relevant; (3) he admitted threatening to kill his wife, Donna Roe (Donna); (4) Donna did not have to produce her diary; and (5) his actions warranted his permanent removal from the marital home. There has been no motion to accelerate the appellate hearing in this matter. See R. 1:2-5; R. 2:9-2.
On January 22, 1991 plaintiff Donna filed a complaint under the Act, see N.J.S.A. 2C:25-13. She alleged that her husband, Richard, had committed an act of domestic violence against her on January 14, 1991. A temporary order was entered on January 22, 1991, restraining Richard from returning to the marital home, prohibiting any contact with Donna, granting Donna temporary custody of the couple's two minor children, and prohibiting Richard's visitation with the children pending a final hearing. Richard appeared pro se before Judge Chaiet on January 23, 1991 and requested an immediate hearing. A hearing was scheduled for January 24, 1991.
On January 24, 1991 Donna appeared with counsel and Richard again appeared pro se. At that time a consent order was entered between the parties in which Richard agreed to remain outside the marital home, pay $100 a week in support, and pay roof and gasoline expenses. A visitation schedule was set and the parties, and their daughter, age 6, were directed to attend counseling. Judge Chaiet ordered the matter re-listed in 30 days.
The matter was not heard until March 25, 1991. Donna and Richard both testified at this hearing. After considering the testimony of both parties, Judge Bassler issued a final order under the Act. The order forbade Richard from "returning to *422 the scene of the domestic violence;" from having any contact with Donna or her relatives, except for making visitation arrangements; and granting custody of the children to both parties.
A consent order was filed on April 23, 1991 and addressed visitation arrangements. The order also provided that Richard pay $100 a week unallocated support, the mortgage on the marital residence, taxes, reasonable utilities, homeowner's insurance, and a gasoline credit card. On May 9, 1991 Richard filed this appeal from the adjudication of domestic violence.
These are the facts developed at the hearing and relied upon for the issuance of the March 25, 1991 order. Donna and Richard Roe were married on May 15, 1983. Their daughter was born September 15, 1983; their son was born on October 10, 1988.
In the complaint against Richard filed on January 22, 1991, Donna alleged that Richard committed an act of domestic violence on January 14, 1991. According to Donna, Richard threatened to kill her, or to have someone kill her, during a heated discussion in their home. At the March 25 hearing she testified that she and Richard had been having marital problems for some time. On the night of January 14, Richard brought home a "soft porn" movie and convinced her to watch it with him. Donna felt "distanced" from her husband, in part because of the movie and his admission to her that he was going to a "go-go" bar the next day with a friend. At about 1:30 a.m. they went to their bedroom and had a "heated discussion." Donna testified that Richard "became very nasty" because she "did not want to be with him" and
He said that's it. I'm putting you on notice. I'm not going to be your patsy anymore. I'm, not carrying  you're carrying your own freight. Richard goes in day care and you go to work.... He said I'm putting you on notice that we're separated so if you, if you hear about me seeing anyone, you know in advance and I'm going, I'm going to get whatever I can, wherever I want it, whenever I want it.
And I said, well, Dick, you know, we'll always be connected because of the kids. And with that he said, not if I kill you. Or I won't kill you, I'll have *423 someone do it. And he wasn't laughing. It was a, it was a  it was something of a heated argument. I mean, not  he was laying down and saying all this. But he wasn't laughing. He wasn't joking. He didn't say I'm only kidding. He didn't say anything and I proceeded to just  I just went to sleep. I was really afraid and as I thought about what he had said, because I've been in a marriage that's been abusive from day one, both physically and mentally and verbally, I took him very seriously. And that's why I filed a complaint.
Donna testified that she feared for her life and believed that Richard had the capability to carry his threat out. Donna said that during their marriage Richard had displayed constant emotional outbursts, used foul language in front of the children, and often threatened to withhold money for food and household bills.
Donna testified to specific examples of abuse over the eight years of their marriage. On one occasion, when their daughter was 18 months of age, Richard grabbed Donna by the throat, pinned her on the couch, and threatened her for arguing with him. Donna testified that when she was nursing their daughter, she "did something he didn't like" and he pulled her by the hair. She said that once he hit her on the head with a hardcover book. Donna also described an "emotional outburst" in which Richard, in frustration because he could not find a pair of jeans, threw a basket of folded laundry down the stairs in front of the children.
Donna filed a domestic violence complaint in October 1985 which she later withdrew. She filed the complaint because of a "series of ... problems" and "all the physical abuse that he doled out" made her realize their marriage was not going to work. She stated that after the complaint was filed the abuse stopped for a while and then changed from physical abuse to verbal abuse and "mental cruelty." She withdrew a final restraining order on October 4, 1985 because it was early in the marriage and she wanted to "try and work things out."
Donna also testified to an alleged act of violence which she said occurred after the filing of the present domestic violence complaint. According to Donna, on March 16, 1991, Richard appeared at her parents' house with the children during one of *424 his visitation days. The baby was asleep and Richard wanted to leave him with Donna. The couple argued and Donna testified that Richard came up the steps and pushed her out of the open door. Donna pushed back, but he pushed harder and "pushed his way into the house." Richard then went up the stairs, had a drink of water and used the bathroom, while Donna yelled at him to leave the house. The couple apparently talked outside for a while before Richard left with the children.
On cross-examination, Donna said that she had filed a divorce complaint February 19, 1991. She admitted that the death threat of January 14, 1991 and the earlier "hair pulling" incident were not among the enumerated allegations of cruelty in the complaint, however. Counsel also brought out the fact that Donna had remained in the home after the January 14th incident for eight days before filing her complaint: during that time the couple continued to talk, go out to eat, and rent movies. Donna never called the police after Richard allegedly threatened her; she slept in the same bed that night and, indeed, for the entire week before the complaint was filed. She explained why she waited so long before filing her complaint:
A: Because I  he had threatened me all throughout the marriage and that's  and I pondered it. For eight days I pondered it thinking if he was serious and his behavior the rest of that week led me to believe that, yes, this man's serious. He told me three times during that week that we were separated and that was it. I said, yeah, I thought maybe, maybe he's just not  maybe he's having a problem. But he continued that behavior the whole week and that's when I decided that's it. I, you know, I think he's serious.
* * * * * * * *
A: But it was very clear to me, because he also had bizarre behavior all through the year. It wasn't just what happened that night. It was lot of things that had led up to me believing that he was serious about what he'd said.
Richard then testified to his version of these events. He is a family law practitioner, admitted to the Bar in 1981; he acknowledged familiarity with domestic violence concepts and the Act. He testified that on January 14, 1991 he had rented the movie "Blue Velvet" and he and his wife watched it on the pullout bed in the family room. They discussed the movie for *425 about 15-20 minutes before going upstairs to their bedroom. Once upstairs, Richard testified they began to engage in sexual relations until Donna called a stop. He claimed she said "I don't know who you've been with or where you've been anymore or who you've been with anymore. So just stay away from me and she pushed me away." He denied that he threatened his wife or said he was going to have her killed. He admitted saying that he was "fed up" and wanted to "open" his marriage and that Donna should get a job, but claimed these statements were made "in the heat of the argument." Then Donna rolled over and went to sleep.
Richard testified that the following week was normal. He rented movies almost every night and often Donna would watch them with him. They went out to eat and took the children to the local children's theater. According to Richard, Donna suggested that they hire a babysitter on Sunday night and go to a movie but he declined. Richard testified that they engaged in sexual relations on Friday, January 18 and Saturday, January 19, but did not "engage in intercourse." He said he was shocked to learn that Donna had filed a domestic violence complaint on January 22 claiming that he had threatened to kill her.
After the temporary restraining order was entered, Richard and Donna negotiated a visitation schedule. The children remained with Donna in the marital home and he was allowed supervised visitation every Saturday. Donna was always present and often talked with Richard during his visitation. Donna eventually allowed unsupervised visitation. Richard denied that he pushed his way into Donna's parents' home on March 16, 1991. He also denied that he ever threw laundry, pulled her hair, punched her or intentionally hit her with a book. Richard testified that they both use foul language, and he often "blows off steam."
*426 After hearing the testimony of the parties and arguments of counsel, Judge Bassler determined by a preponderance of the evidence that Donna proved that an act of domestic violence had occurred. Richard was permanently restrained from returning to the marital home.

I
The Prevention of Domestic Violence Act of 1981, N.J.S.A. 2C:25-1 to 2C:25-16 (and its 1990 successor, N.J.S.A. 2C:25-17 to 2C:25-33, effective November 15, 1991), were enacted by the Legislature to protect victims of domestic violence and to provide uniformity in prosecuting and adjudicating such claims. Domestic violence was defined under the old Act at the pertinent time in January 1991 as "the occurrence of one or more of the following [ten] acts between cohabitants: (1) Assault ... N.J.S.A. 2C:12-1 [through] ... (10) Harassment ... N.J.S.A. 2C:33-4." N.J.S.A. 2C:25-3b.[2] Each act of violence *427 listed in N.J.S.A. 2C:25-3b was defined by direct reference to the applicable Code of Criminal Justice section. N.J.S.A. 2C:25-13a provided that "the standard for proving the allegations in the [domestic violence] complaint shall be by a preponderance of the evidence." Interestingly, terroristic threats or threats to kill, see N.J.S.A. 2C:12-3(a) and (b), were not included within the ten enumerated criminal acts of domestic violence listed in N.J.S.A. 2C:25-3, enacted in 1981, but are now included at N.J.S.A. 2C:25-19 of the recently-enacted Prevention of Domestic Violence Act of 1990, effective November 15, 1991; L. 1991, c. 261.
Richard contends that since the underlying acts defining domestic violence under N.J.S.A. 2C:25-3b are criminal in nature, the burden of proving such acts must be by the criminal standard of "beyond a reasonable doubt." He urges that a two-step analysis is required under the Act. The judge must first determine whether any criminal act which may constitute domestic violence occurred using the "reasonable doubt" standard. If an underlying act of domestic violence is proven, the judge should then determine whether an order pursuant to the Act should be entered using a "preponderance of the evidence" standard. This contention is both inherently contradictory and in direct conflict with the words of the statute.
This court was presented with an opportunity to determine the applicable standard of review in domestic violence cases in E.K. v. G.K., 241 N.J. Super. 567, 575 A.2d 883 (App.Div. 1990). In E.K., the husband brought an action under the Act for a restraining order compelling his wife to cease harassing him by disciplining their child in a manner which he disapproved. *428 Although faced with the issue of whether a criminal standard of proof should be applied in an action under the Act, we declined to decide the issue because the record did not establish purposeful harassment by any standard. Id. at 570, 575 A.2d 883.
The legislative findings in N.J.S.A. 2C:25-2 recited the intent of the Legislature to assure victims of domestic violence maximum protection from abuse available under the law. The Act was adopted to correct the disparate application of criminal statutes to similar crimes of domestic violence. N.J.S.A. 2C:25-2. Complaints of domestic violence are civil filings in the Family Part of the Chancery Division but a criminal complaint for the same act is not precluded. N.J.S.A. 2C:25-12a. In his comment to the New Jersey Criminal Code Annotated, John Cannel states:
Although it is part of the Criminal Code, very little of Chapter 25 concerns substantive criminal law. The Chapter defines no new crimes. Instead it provides for particular procedures and predominantly civil remedies in cases where those crimes listed at 2C:24-8 and 2C:25-3b are alleged and the person charged and the victim stand in the relationships defined at 2C:24-8 and 2C:25-3a. [J. Cannel, New Jersey Criminal Code Annotated, Comment N.J.S.A. 2C:25-1, at 437 (1991)].
Since a domestic violence complaint is pursued as a civil action and civil remedies obtain, the preponderance standard of proof better serves the purpose of the Act in protecting victims of domestic violence. Allegations of domestic violence will frequently be difficult to prove due to the private nature of the offense. There are usually few, if any, eyewitnesses to marital discord or domestic violence, thus enhancing credibility disputes. A criminal standard of proof may be all but impossible for most victims to prove and would undermine the social purposes of the Act. Since criminal sanctions are not imposed, no constitutional problem is presented by the preponderance of evidence standard.

II
Richard next urges that the record was insufficient to permit finding that an act of domestic violence was committed *429 under any standard of proof. We disagree. We conclude that there was sufficient evidence in the record to support the finding that an act of "harassment," within the scope of N.J.S.A. 2C:33-4a, took place. That section provides in pertinent part "a person commits a[n] ... offense if, with purpose to harass another, he: (a) Makes, or causes to be made, a communication ... anonymously or at extremely inconvenient hours, or in offensively coarse language or any other manner likely to cause annoyance or alarm." (emphasis supplied). Richard does not challenge the constitutionality of the harassment statute on vagueness or overbreadth grounds.[3]
The evidence was sufficient to support the charge that a violation of the harassment statute, N.J.S.A. 2C:33-4a, took place, specifically a communication of a threat to kill plaintiff by defendant or another in a "manner likely to cause annoyance or alarm" under the findings by the judge based on the evidence.
While there are some questions in the plaintiff's testimony, that is why did she wait the eight days or so before filing the complaint if in fact she really felt her life was at risk, these are questions of course which need to be thought through. But as I read the harassment statute, it is not whether she is in mortal fear of her life, it's whether the plaintiff made a statement which meets the criteria in N.J.S.A. 2C:33-4. I find perfectly credible the plaintiff's testimony that she was in fact threatened by the defendant. I'll have some one kill you. The fact that she went to sleep after that, it seems to me, does not mitigate against the statement itself. And in fact, if you listen carefully or you *430 in court listened very carefully to the testimony of the defendant on the witness stand, although initially he appeared to deny that this kind of statement ever was made, it became quite apparent that he acknowledged that in fact such a statement had been made.
The judge found that Donna testified "credibly" about "problems during the entire year" and "that there were constant emotional outbursts by defendant." He found an "atmosphere of hostility in this household culminating in the threat." He thought that Donna and the children had the right to live "not subject to that kind of threat." He concluded that "though such threats may be made in the middle of heated exchanges it is still something that she is entitled to be free from." The judge found that the previous history "which happened in 1984 or 1985" could not support in itself a restraining order "but certainly its a factor."
The judge made these further specific findings:
I believe the plaintiff's testimony. Despite the fact that the complaint was withdrawn in the past, there has been a history in this family of domestic violence. The allegations in the prior complaint were that the plaintiff was assaulted by her husband and is in fear, that he assaulted the plaintiff several times by punching her, pulling her hair, hitting her with household objects, that on September 15th, the 25th, of 1985, he pushed and shoved her, continually harassed the plaintiff by threatening to take their baby away from her. Whether or not that is so, I don't believe there's any testimony on that. This is about taking the baby away. But there was certainly testimony about pulling her hair while she was nursing. I believe that. There was testimony that a book was thrown at her. I believe that and there was testimony involving a laundry basket and contrary to the defendant's denial, I believe the plaintiff's testimony.
I believe that that statute does not require prior findings or the statute would have said that. The statute says a previous history of domestic violence is a factor to take into consideration. And what they mean by that is that consideration is not relevant on a finding of where the domestic violence occurred recently. It has to do in fashioning the kind of order that the Court is required to fashion.
The judge then alluded to one of the statutory criteria  "the best interests of the victim and the child." See N.J.S.A. 2C:25-13a(4). He found "that it's certainly in the best interest of the victim and the child to have a cooling off period, to have a period of time in which the children and the plaintiff are able to *431 live in the home free of the kind of threats and the kind of physical abuse that has happened."
We are satisfied that the specific threat to kill in the context of the prior events described by Donna and believed by Judge Bassler was sufficient to sustain the charge by a preponderance of the evidence. Our task is not to reweigh the evidence but to determine if sufficient evidence exists. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974); Cf. E.K. v. G.K., 241 N.J. Super. 567, 575 A.2d 883 (App.Div. 1990); Grant v. Wright, 222 N.J. Super. 191, 536 A.2d 319 (App.Div.), certif. denied 111 N.J. 562, 546 A.2d 493 (1988) (both cases where the evidence was insufficient to sustain a domestic violence complaint based on harassment charges); see N.J.S.A. 2C:25-13a, now N.J.S.A. 2C:25-29a (factors considered for domestic violence finding).

III
We conclude from our analysis of the judge's opinion that he did not base his decision on his finding as to the post-filing March 16[4], 1991 alleged assault incident. After reciting his oral decision in favor of Donna, the judge said that the March 16 incident "certainly constitutes an assault, which is an additional ground for entering a restraining order." We construe this finding as surplusage in terms of the decisional result and not essential to support the judgment. Error in this regard, if any, was thus harmless. R. 2:10-2.

IV
The judge did not err in permitting testimony of prior acts of the defendant which had never been the subject of an *432 adjudication of domestic violence. Over defense counsel's objection, Donna testified as to prior incidents of physical and mental abuse which she allegedly had suffered during the prior five years. The judge allowed the testimony since the history of domestic violence between the parties is an evidentiary consideration under N.J.S.A. 2C:25-13a(1): "The court shall consider but not be limited to the following factors: (1) The previous history of domestic violence between the cohabitants including threats, harassment and physical abuse; ...." The Act specifically requires the judge to consider "the previous history." The Act does not limit the judge to prior adjudications of domestic violence alone. Cf. Evid.R. 55 (other crimes or civil wrongs usually excluded as evidence); N.J.S.A. 2A:81-12 (prior criminal convictions admitted only to affect credibility). If the Legislature had intended to limit admissibility only to prior adjudications of domestic violence, as opposed to "the previous history," we are certain the statute would have clearly said so.

V
Next, defendant claims the judge erred in finding that he "admitted" making the death threat. The judge stated in his decision that he found Donna's testimony more credible than Richard's. In regard to the alleged threat to Donna, the judge stated:
if you listen carefully or you in court listened very carefully to the testimony of the defendant on the witness stand, although initially he appeared to deny that this kind of statement was ever made, it became quite apparent that he acknowledged that in fact such a statement had been made.
The judge found that this alleged "admission" occurred when Richard summarized a conversation he had with Donna after she filed her complaint.
On appeal, the fact-finding of the judge may not be disturbed if supported by adequate, substantial and credible evidence. Rova Farms Resort v. Investors Ins. Co., supra, 65 N.J. at 484, 323 A.2d 495. The judge heard the testimony and *433 observed Richard's demeanor at trial. In our view he was entitled to make this inference of an admission from his testimony.

VI
Donna was advised by her attorney in June 1990 to keep a diary about specific events occurring between herself and Richard. This diary was subpoenaed by defense counsel prior to the hearing but was never produced. Donna's counsel claimed the attorney's work-product and the attorney-client privilege and resisted disclosure.
At the hearing, Donna's counsel told the judge that he had directed Donna to keep a diary of specific events when she consulted him about her marital problems. He stated that the diary was a direct result of advice given pursuant to an attorney-client relationship, and fell within the privilege, Evid.R. 26. According to counsel, the diary was currently used by him to formulate ideas for Donna's divorce case.
The judge decided the diary was work-product prepared at the request of counsel and that any privilege or protection had not been waived. We find no abuse of discretion in this evidentiary ruling. There was no showing that Richard could not obtain pertinent information to defend the domestic violence charge from a "less intrusive source", In re Kozlov, 79 N.J. 232, 243-244, 398 A.2d 882 (1979), or was in any way prejudiced in preparing for this hearing by the preclusive ruling. See In the Matter of the Probate of the Last Will and Testament of John Pretino, 150 Misc.2d 371, 567 N.Y.S.2d 1009 (Surrogate Ct. 1991) (diary protected from disclosure in probate matter by attorney-client privilege and litigation preparation doctrine).

VII
Finally, we reject Richard's contention that his actions did not warrant removal from the home. He is correct in his assertion that a finding of domestic violence did not mandate an *434 order restraining him from access to the marital home. Nevertheless, such an order is permissible under N.J.S.A. 2C:25-13b, which provides that the court may issue an order granting "any or all" of seven types of relief. This determination was properly left to the discretion of the judge. As Richard noted in his brief, an order of exclusive possession may be modified at any time by petition of either party. N.J.S.A. 2C:25-13b(2), now N.J.S.A. 2C:25-29(b)(2). Such relief, if sought, may not be precluded by our ruling today.
Affirmed.
NOTES
[1] The names of the parties are fictitious to protect the privacy of the complainant and her children.
[2] N.J.S.A.2C:25-3b listed the following ten acts:

* * * *

(1) Assault ........................... N.J.S. 2C:12-1
(2) Kidnapping ........................ N.J.S. 2C:13-1
(3) Criminal restraint ................ N.J.S. 2C:13-2
(4) False imprisonment ................ N.J.S. 2C:13-3
(5) Sexual assault .................... N.J.S. 2C:14-2
(6) Criminal sexual contact ........... N.J.S. 2C:14-3
(7) Lewdness .......................... N.J.S. 2C:14-4
(8) Criminal mischief ................. N.J.S. 2C:17-3
(9) Burglary .......................... N.J.S. 2C:18-2
(10) Harassment ....................... N.J.S. 2C:33-4

The New Prevention of Domestic Violence Act of 1990 adds three more crimes: homicide, N.J.S.A. 2C:11-1 et seq.; terroristic threats, N.J.S.A. 2C:12-3; and criminal trespass, N.J.S.A. 2C:18-3. See N.J.S.A. 2C:25-19.
[3] Similar language as N.J.S.A. 2C:33-4a is found in the Model Penal Code § 250.4(3). As the Model Penal Code Commentary to this section notes, the First Amendment is implicated since the provision proscribes harassment by communication. The Commentary notes that this particular provision (N.J.S.A. 2C:33-4a or § 250.4(3)) presents a difficult overbreadth issue. Although the principal application of this section is to harassing phone calls, it has been applied in other contexts. In light of the Supreme Court's decision in Rowan v. Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), the Commentary notes that "Subsection (3) should perhaps be interpreted to apply only to repeated phone calls or other kinds of communicative harassment that intrude into an individual's legitimate expectation of privacy." Model Penal Code and Commentaries § 250.4, at 372-374 (Official Draft and Revised Comments 1980).
[4] The judge's specific finding in this regard was: "The March 16th incident, as explained by the defendant, I found totally incredible. I don't believe a word of his explanation. I believe the plaintiff's testimony that in fact he did push his way into the house contrary to her, that he pushed her, and that certainly constitutes an assault, which is an additional ground for entering a restraining order."