722 A.2d 971 (1999)
318 N.J. Super. 22
Ross HANNAN and Erica Hannan, Plaintiffs-Appellants,
v.
ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER; Frank Yuppa, M.D., Chairman of Radiology; Lee Snipes, Biomedical Engineer; Manny Christakos, M.D.; Dr. Mark Needle; Joseph Vitale, M.D.; Francis Ferrante, M.D.; and West Paterson Family Medical Center, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 1999.
Decided February 2, 1999.
*972 Lum, Danzis, Drasco, Positan & Kleinberg, Roseland, for plaintiffs-appellants (Cynthia A. Matheke, of counsel and on the brief).
Reiseman, Sharp, Kelsey & Brown, Parsippany, for defendant-respondent Manny Christakos, M.D. (Meghan E. Walsh, on the brief).
Connell, Foley & Geiser, Roseland, for defendants-respondents Joseph Vitale, M.D., Francis Ferrante, M.D. and West Paterson Family Medical Center, rely on the brief submitted on behalf of respondent Manny Christakos, M.D.
Hein, Smith, Berezin, Maloof, Davidson & Jacobs, Hackensack, for defendants-respondents St. Joseph's Hospital and Medical Center, Frank Yuppa, M.D. and Lee Snipes, rely on the brief submitted on behalf of respondent Manny Christakos, M.D.
Philip F. Mattia & Associates, Wayne, for defendant-respondent Mark Needle, M.D., rely on the brief submitted on behalf of respondent Manny Christakos, M.D.
Before Judges HAVEY, SKILLMAN and PAUL G. LEVY.
The opinion of the court was delivered by HAVEY, P.J.A.D.
By leave granted, plaintiffs appeal from a pretrial order entered in this medical malpractice case. The order compels plaintiff Ross Hannan to disclose a chronology of events in the form of "notes" he prepared *973 relating to the care received during his treatment and hospitalization. Plaintiff prepared the notes in accordance with his attorney's instructions in anticipation of instituting suit. The motion judge concluded that since plaintiff had referred to the notes in answering interrogatories, he waived any attorney-client privilege afforded by N.J.S.A. 2A:84A-20 (N.J.R.E. 504). We reverse and remand for further proceedings.
Plaintiff, a diabetic, underwent an above-the-knee amputation of his right leg at defendant St. Joseph's Hospital and Medical Center (St. Joseph's). In their complaint, plaintiffs allege that St. Joseph's and its employees, and defendants Frank Yuppa, M.D. and Lee Snipes, were negligent in their diagnoses and in failing to maintain proper radiologic and diagnostic equipment at the hospital "to facilitate a timely and exact diagnosis" of plaintiff's condition. Plaintiffs also charge that defendants Manny Christakos, M.D., Mark Needle, M.D., Joseph Vitale, M.D., and Francis Ferrante, M.D., were negligent in their treatment of plaintiff during the hospitalization.
A week after being released from the hospital, plaintiff retained counsel, who advised him to prepare a "chronology of events to the best of his recollection in order to communicate to counsel the order of events and better facilitate his representation." Plaintiff prepared the notes and forwarded them to his attorney. Copies were made by the attorney and the original notes were returned to plaintiff. According to plaintiff's attorney, "the[ ] notes were used by both [plaintiff] and myself in preparation of his answers to Interrogatories prior to the time that those answers were submitted to the defendants." Plaintiff acknowledges that he referred to the notes in answering the interrogatories. During his deposition plaintiff referred to the interrogatories to refresh his recollection while being deposed.
Defendants Christakos and Needle moved to compel production of plaintiff's notes. Plaintiff resisted disclosure, citing the attorney-client and work-product privileges. The motion judge ordered that the notes be disclosed, reasoning that plaintiff had waived the alleged attorney-client privilege by utilizing them in preparing answers to interrogatories. Citing Coyle v. Estate of Simon, 247 N.J.Super. 277, 588 A.2d 1293 (App.Div.1991) and N.J.R.E. 612, the judge observed that "once a party utilizes those notes whether it be to answer interrogatories, to assist in answering interrogatories ... or in anticipation to testify at trial or at depositions, there is a waiver." At plaintiffs' motion for reconsideration, which was denied, the motion judge elaborated, stating that a party "cannot read something, look at something, use those notes to jog one's memory or refresh one's memory and then not be subject to cross examination based on those very notes the witness or party has been utilizing."

I
The attorney-client privilege is codified at N.J.S.A. 2A:84A-20 (N.J.R.E. 504). It states in pertinent part that "communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged...." The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and rests on the need to `encourage full and frank communication between attorneys and their clients.'" United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div.1984) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 684, 66 L.Ed.2d 584, 591 (1981)). "`Preserving the sanctity of confidentiality of a client's disclosures to his attorney [promotes] an open atmosphere of trust.'" United Jersey Bank, supra, 196 N.J.Super. at 561, 483 A.2d 821 (quoting Reardon v. Marlayne, 83 N.J. 460, 470, 416 A.2d 852 (1980)).
The privilege applies to "communications" between the lawyer and his client; the "communications" must be made "in professional confidence." N.J.R.E. 504; Coyle, supra, 247 N.J.Super. at 282, 588 A.2d 1293. In other words, the privilege "accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client." United Jersey Bank, supra, 196 N.J.Super. at 562, 483 A.2d 821. If the purpose of the communication is to aid the attorney in giving legal advice to his client or *974 to prepare for litigation, then the privilege applies. Payton v. New Jersey Turnpike Auth., 148 N.J. 524, 551, 691 A.2d 321 (1997).
Here, plaintiff's attorney instructed plaintiff to prepare a chronology of facts relating to his medical treatment. Plaintiff prepared such chronology in the form of notes and forwarded the notes to his attorney. The notes, when forwarded to counsel, were clearly "communications between lawyer and his client in the course of that relationship...." N.J.R.E. 504; N.J.S.A. 2A:84A-20; see Coyle, supra, 247 N.J.Super. at 281, 588 A.2d 1293 ("[a]t the time they were given, plaintiffs' written statements to their attorney reciting facts relating to their claims were protected by the attorney-client privilege"); see also Macey v. Rollins Envtl. Servs. (N.J.), Inc., 179 N.J.Super. 535, 540, 432 A.2d 960 (App.Div.1981) (holding that statements prepared by corporate agent at the behest of the corporation's general counsel were protected by the attorney-client privilege). In addition, such "communications" carry a presumption of confidentiality. See Biunno, Current N.J. Rules of Evidence, Comment 8 to N.J.R.E. 504(3) (Gann 1999). The notes were therefore protected by the privilege at the time they were forwarded to counsel.

II
Plaintiff's notes were also protected by the work-product privilege. R. 4:10-2(c) provides in part that:
Subject to the provisions of R. 4:10-2(d), a party may obtain discovery of documents and tangible things otherwise discoverable under R. 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

[Emphasis added.]
Here, the notes in question, were "prepared in anticipation of litigation ... by ... another party," the plaintiff. In Roe v. Roe, 253 N.J.Super. 418, 601 A.2d 1201 (App.Div. 1992), plaintiff kept a diary about specific events occurring between herself and her husband against whom she later filed a domestic violence complaint. Plaintiff's counsel had directed plaintiff to keep the diary after she consulted him about her marital problems. Id. at 433, 601 A.2d 1201. The trial judge decided the diary was work-product prepared at the request of counsel and that any privilege or protection had not been waived, and therefore quashed defendant's subpoena demanding its production. Ibid. We found no abuse of discretion in the judge's evidentiary ruling. Ibid.
So too here. According to plaintiff's counsel, the plaintiff's notes were prepared at counsel's behest to "better facilitate his representation." Defendants concede that the notes were prepared in anticipation of litigation. Plaintiff's counsel may use the notes to determine which legal theories of medical malpractice are best supported by plaintiff's factual recollections.

III
The closer question is whether plaintiff waived his privileges afforded by N.J.S.A. 2A:84A-20 (N.J.R.E. 504) and the work-product rule. R. 4:10-2(c).
N.J.S.A. 2A:84A-29 (N.J.R.E. 530) addresses waiver and provides in part:
A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.
On its face, this rule appears to be inapplicable. At best it may be argued that subsection (b) applies (i.e., disclosure of privileged matter). However, there was no "disclosure" of privileged communication to a third party. Plaintiff merely used his notes to refresh his memory prior to answering interrogatories.
*975 Citing Coyle, supra, 247 N.J.Super. 277, 588 A.2d 1293, the motion judge found a waiver of the attorney-client privilege because, as noted, plaintiff had utilized the notes in answering interrogatories. In Coyle, a medical malpractice action, plaintiffs each gave their attorney a written statement in which they recited the factual basis of their claims against defendants. Id. at 281, 588 A.2d 1293. The attorney in turn gave copies of the statements to two expert witnesses who were expected to testify on plaintiffs' behalf at trial. Both experts read the statements, but could not recall which portions of the statements, if any, they relied on in forming the opinions expected to be given at trial. Ibid. Although we found that the statements were protected by the attorney-client privilege, we held that plaintiffs waived the attorney-client privilege when the statements were submitted to the experts. We observed, "where the client expects to use the communication itself as evidence, it is no longer secret. The privilege is thereby lost, and the communication must be disclosed in discovery." Id. at 282, 588 A.2d 1293.
Our holding in Coyle was anchored to the application of R. 4:10-2(d)(1), which provides in relevant part:
A party may through interrogatories require any other party to disclose the names and addresses of each person whom the other party expects to call at trial as an expert witness, ... to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion....
We held that R. 4:10-2(d)(1) required plaintiffs to disclose to defendants "an otherwise privileged communication made to his or her... expert if that communication is used by the expert to arrive at an opinion that the expert will give at trial." Coyle, supra, 247 N.J.Super. at 282-83, 588 A.2d 1293. We cautioned, however, that only that portion of the plaintiffs' statements used by the experts "are free of the attorney-client privilege." Id. at 283, 588 A.2d 1293.
Unlike in Coyle, plaintiff here did not disclose the notes to an expert for the purpose of having an expert rely on the notes in rendering an opinion. The notes were disclosed to no one except plaintiff's attorney, and were utilized solely to answer interrogatories. Thus, R. 4:10-2(d)(1) is inapplicable. It is, of course, clear that answers to interrogatories may, under limited circumstances, be introduced as substantive evidence at trial. See R. 4:17-8. However, it does not follow that the process of answering interrogatories (except when a privileged communication is made to an expert and used by the expert to arrive at an opinion) is governed by R. 4:10-2(d)(1) or decisional law addressing the admissibility of expert testimony.
The motion judge also reasoned that the process of answering interrogatories is controlled by N.J.R.E. 612. That rule, addressing writings used to refresh memory, states in pertinent part:
[I]f a witness while testifying uses a writing to refresh the witness' memory for the purpose of testifying, an adverse party is entitled to have the writing produced at the hearing for inspection and use in cross-examining the witness.... If the witness has used a writing to refresh the witness' memory before testifying, the court in its discretion and in the interest of justice may accord the adverse party the same right to the writing as that party would have if the writing had been used by the witness while testifying.

[Emphasis added.]
N.J.R.E. 612 relates to testimonial evidence. "`[T]estimony' is in fact a particular kind or species of evidence, namely, that which comes to the tribunal through living witnesses speaking under oath or affirmation in the presence of the tribunal, judicial or quasi-judicial." 29 Am.Jur.2d Evidence § 5 (1994). The first sentence of the rule is inapplicable because plaintiff did not refresh his memory by referring to the notes "while testifying." While it may be so that both answering interrogatories and testifying occur under oath, it does not follow that the acts of answering interrogatories and giving testimony are synonymous. The second sentence does not apply because defendants did not make the requisite preliminary showing that plaintiff referred to the notes "to refresh [his] memory before testifying[.]" In fact, *976 plaintiff expressly stated that he did not refer to the notes prior to his deposition. We therefore find no waiver of the attorney-client privilege as it applies to the notes plaintiff prepared in anticipation of litigation.[1]

IV
Defendants argue that if plaintiff has not waived the attorney-client and work-product privileges, the privileges should be pierced because defendants have a compelling need to examine plaintiff's notes. Defendant Christakos points out that "[t]here are very significant factual differences among the parties' recollections as to how the events during the plaintiff's hospitalization actually occurred[,]" that plaintiff's notes "may provide evidence of what actually occurred" and, because "witness credibility" will be a central issue in the case, defendant "should be allowed to obtain all relevant factual information available."
In In re Kozlov, 79 N.J. 232, 243-44, 398 A.2d 882 (1979), our Supreme Court defined the "necessary foundations to the valid piercing of [the attorney-client] privilege...." There must be: (1) a legitimate need of the party to reach the evidence sought to be privileged; (2) a showing of relevance and materiality; and (3) the information cannot be secured from any less intrusive source.
As to the work-product privilege, documents prepared by a party in anticipation of litigation are discoverable if the party seeking discovery "has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." R. 4:10-2(c). The rule is intended to accommodate the competing policy considerations in the discovery area; the interest in privacy of preparation of litigation, and our firm policy that essential justice is better achieved "when there has been full disclosure so that the parties are conversant with all the available facts." Jenkins v. Rainner, 69 N.J. 50, 56, 350 A.2d 473 (1976). In Jenkins, supra, for example, the Court held that the plaintiff in a personal injury action was entitled to obtain motion picture films taken of her by defendant's private investigator during a surveillance prior to trial. Id. at 53-57, 350 A.2d 473. The Court reasoned that plaintiff had established a "substantial need" to inspect the films since plaintiff would be unduly surprised by production of the film at trial without having the opportunity to challenge the integrity of the film or to develop evidence to counter it. Id. at 57-58, 350 A.2d 473. Also, plaintiff could not obtain the substantial equivalent of the film "without undue hardship" because of the uniqueness of the film having been taken eighteen months prior to the deposition of the investigator. Id. at 58, 350 A.2d 473. See also In re Environmental Ins. Declaratory Judgment Actions, 259 N.J.Super. 308, 318, 612 A.2d 1338 (App.Div.1992) (recognizing that an interview report of a deceased employee would satisfy the substantial need/undue hardship standard under R. 4:10-2(c)).
Whether we apply the test pronounced in Kozlov, supra, or the "substantial need" test under R. 4:10-2(c), we are satisfied that plaintiff's notes need not be disclosed. The information sought by defendants concerning the treatment and events occurring during the hospitalization are presumably recorded in the detailed hospital and physicians' records prepared during plaintiff's hospitalization. Thus, the information can be secured from a "less intrusive source." Kozlov, supra, 79 N.J. at 243, 398 A.2d 882. The facts contained in the hospital and physicians' records are the best evidence of what occurred during plaintiff's hospitalization and are at least the "substantial equivalent" of plaintiff's notes. R. 4:10-2(c). Indeed, the hospital records will most likely be more reliable and more authoritative than plaintiff's self-recorded notes. See e.g., N.J.R.E. 803(c)(6) (exception to the hearsay rule relating to business records); N.J.R.E. 803(c)(4) (exception to the rule relating to statements made for purposes of medical diagnosis or treatment). Moreover, if the records were *977 insufficient, defendants had the opportunity to find out exactly what plaintiff recalled concerning the care he received during his deposition.
Reversed and remanded for further proceedings.
NOTES
[1] If, of course, plaintiff uses his notes while actually testifying during trial, or reviews the notes to refresh his recollection prior to testifying, N.J.R.E. 612 may be applicable.