267 N.J. Super. 406 (1993)
631 A.2d 984
PAMELA MURRAY, PLAINTIFF-RESPONDENT,
v.
GEORGE H. MURRAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1993.
Decided October 12, 1993.
*407 Before Judges SHEBELL, LONG and LANDAU.
Kornreich & Harkov, attorneys for appellant (Chen Kornreich, on the brief).
C. Catherine Jannarone, attorney for respondent (Lynn J. Hershkovits, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This is an appeal by defendant George H. Murray from an order entered by the Family Part under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33, on July 21, 1992 following a brief hearing on a harassment complaint filed by plaintiff Pamela A. Murray on July 13, 1992. A temporary restraining order barring defendant from the matrimonial home and granting its possession to plaintiff was issued when the complaint was filed. We reverse.
Defendant's complaint for divorce from the plaintiff was filed on July 16, 1992. That a divorce was imminently contemplated by defendant and known to plaintiff is shown by the only "harassment" *408 particulars cited in the Domestic Violence Complaint which were:
Endangering plaintiff's life, health, or well-being by: Threatening to take over the assets of the house in a divorce settlement. Victim stated that she knows her husband has been cheating on her and refuses to talk to her.
There was no prior history of domestic violence, according to the complaint.
Following a hearing on the complaint, the sole reason given by the trial judge to sustain the finding of harassment was "that over a period of a year on several occasions, more than  certainly more than one and I find more than three or four, that it's repeatedly been brought up to the plaintiff that she is not sexually attractive to him, he doesn't love her.... And I find that they are the types of statements that have been meant to belittle her and to demean her and inflict emotional abuse upon her." There followed findings respecting support, mortgage payments, automobile, and the like. Defendant was ordered out of the house, and directed to make various payments. Plaintiff was given possession of a Volvo automobile as well as the matrimonial residence.
Defendant does not dispute telling his wife that he didn't love her or have sexual feelings for her. He says they attended marital counselling without success, and that he was merely responding honestly to his wife's inquiries. The only evidence of record which touched on plaintiff's fear of violence (there were no acts of physical violence) was plaintiff's testimony that she heard defendant say he might hit her if plaintiff tried to stop him from moving out or leaving her.[1]
There was no evidence of record to sustain a finding that the purpose of defendant's remarks was to repeatedly alarm or annoy the plaintiff, although it may have had that effect. Indeed, the domestic violence complaint and plaintiff's own testimony appear *409 to support defendant's contention that he was planning to leave and divorce plaintiff and had made this known.
The Legislative findings which undergird the Prevention of Domestic Violence Act are set forth in N.J.S.A. 2C:25-18.[2] In Grant v. Wright, 222 N.J. Super. 191, 536 A.2d 319 (App.Div. 1988), certif. denied, 111 N.J. 562, 546 A.2d 493 (1988), we reversed a finding of harassment under the Act because neither the court's findings nor the evidence were sufficient to make out the elements *410 of N.J.S.A. 2C:33-4 (harassment)[3]. Here, too, we so conclude. No basis for the finding of the element of "purpose to alarm or seriously annoy," is present. (emphasis supplied). See, E.K. v. G.K., 241 N.J. Super. 567, 570-71, 575 A.2d 883 (App.Div. 1990).
We are concerned, too, with the serious policy implications of permitting allegations of this nature to be branded as domestic violence and used by either spouse to secure rulings on critical issues such as support, exclusion from marital residence and property disposition, particularly when aware that a matrimonial action is pending or about to begin.
As we read the findings, and the record, this defendant was tarred with the brush of domestic violence because he told his wife on a number of occasions that he planned to divorce and leave her, and that he no longer loved or felt attracted by her. One spouse has thus entered the pending matrimonial litigation with two strikes already called; spousal abuse and adverse disposition of support and property issues. The N.J.S.A. 2C:33-4c words "alarm or seriously annoy" must here be considered in light of the legislative purposes for the Prevention of Domestic Violence Act quoted in footnote 1. (See, E.K. v. G.K., supra, 241 N.J. Super. at 571, 575 A.2d 883). The result reached by the Family Part judge is not consistent with this purpose.
We think it clear that pre-divorce statements respecting absence of affection or physical desire alone were not intended to be sufficient to fulfill the elements of purposeful alarm or serious *411 annoyance necessary to constitute harassment under either statute.
The order under review is reversed, and the Domestic Violence Complaint dismissed. We recommend that, if not heretofore addressed, the property and support issues treated in the Domestic Violence order be promptly considered in the pending divorce suit upon application to the Family Part.
NOTES
[1] At trial, plaintiff referred to the fact that defendant kept guns in the house. However, there was no indication of any threat to use a weapon, and the trial judge clearly credited only the contention of emotional harassment.
[2] The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spouse abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

* * * * * * * *
The Legislature further finds and declares that even though many of the existing criminal statutes are applicable to acts of domestic violence, previous societal attitudes concerning domestic violence have affected the response of our law enforcement and judicial systems, resulting in these acts receiving different treatment from similar crimes when they occur in a domestic context. The Legislature finds that battered adults presently experience substantial difficulty in gaining access to protection from the judicial system, particularly due to that system's inability to generate a prompt response in an emergency situation.
It is the intent of the Legislature to stress that the primary duty of a law enforcement officer when responding to a domestic violence call is to enforce the laws allegedly violated and to protect the victim.... It is further intended that the official response to domestic violence shall communicate the attitude that violent behavior will not be excused or tolerated, and shall make clear the fact that the existing criminal laws and civil remedies created under this act will be enforced without regard to the fact that the violence grows out of a domestic situation.
[3] N.J.S.A. 2C:33-4 provides in pertinent part:

Harassment. Except as provided in subsection d., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.