786 A.2d 881 (2001)
346 N.J. Super. 34
Mary B. CHERNESKY, Plaintiff-Respondent,
v.
Frank S. FEDORCZYK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 8, 2001.
Decided December 20, 2001.
*882 Steven H. Fleischer, Somerville, attorney for appellant.
Respondent has not filed a brief.
Before Judges KING, CUFF and WINKELSTEIN.
The opinion of the court was delivered by *883 CUFF, J.A.D.
In this appeal, we review a final restraining order entered pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. The order was entered after defendant admitted that the acts in the complaint had occurred. This appeal raises important issues concerning the manner in which undisputed incidents of alleged domestic violence are treated. We reverse.
On February 2, 2001, plaintiff Mary B. Chernesky filed a domestic violence complaint against defendant Frank S. Fedorczyk. In the complaint, plaintiff alleged that
ON 2/1/01 AT 7:30PM THE DEFENDANT CAME TO VICTIM'S KITCHEN DOOR TO BRING BACK PARTIES' YOUNGEST CHILD AND STARTED TO YELL AT PLAINTIFF AS TO WHY THEIR CHILD DOES NOT LISTEN TO HIM. DEFENDANT HELD ONE HAND ON THE DOOR FRAME AND HIS OTHER HAND ON THE DOOR, PREVENTING PLAINTIFF FROM ESCAPING THE CONFRONTATION.
A temporary restraining order issued and the hearing on plaintiff's application for a final restraining order was scheduled for February 8, 2001.
On February 8, both parties appeared before a Superior Court Judge. The case was called, the parties identified themselves, the judge inquired how many witnesses would be presented, and then stated as follows:
THE COURT: Are you disputing the allegations in the complaint?
MR. FEDORCZYK: No.
THE COURT: No? You're admitting to an act of harassment as [it] is defined under the Domestic Violence Act?
MR. FEDORCZYK: Yes. But I'd like to explain.
THE COURT: All right.
MR. FEDORCZYK: We had a dispute.
THE COURT: Okay. He has admitted to an act of domestic violence, so I'll sign the restraining order. Any children involved here?
When defendant responded that they had three children, the judge ascertained that the parties were divorced and the judgment of divorce governed visitation. The judge instructed defendant, however, that he was to have no contact with plaintiff and further addressed the times for visitation. After the judge informed defendant that he would be subject to thirty days in jail if he violated the order twice, defendant inquired how long the order would be in effect. The following colloquy took place:
MR. FEDORCZYK: How long is this for, ma'am?
THE COURT: Until she decides to drop it or I drop it on a motion made by you and certain factors have to be established.
MR. FEDORCZYK: Okay. Because I guess I would have dispute it then to think that this incident didn't constitute a restraining order.
THE COURT: I'm sorry, what?
MR. FEDORCZYK: I would have to dispute this to say that this didn't constitute a restraining order[.]
THE COURT: You mean, if you wanted to come here later and ask that it be dropped?
MR. FEDORCZYK: Yes.
THE COURT: It's a casesir, it would take me a very long time to explain and I can't give advise [sic].
MR. FEDORCZYK: Okay.

*884 THE COURT: You would have to either look it up yourself as to what you would have to show or consult with a lawyer.
Soon thereafter, the hearing concluded.
An order issued under the Act must be predicated on a "finding or an admission ... made that an act of domestic violence was committed by [defendant]." N.J.S.A. 2C:25-29a. See also R. 5:7A. Here, the final restraining order is premised on an admission; however, the acts which defendant did not dispute do not, on their face, constitute an act of domestic violence.
Plaintiff asserted that defendant's conduct on the evening of February 1, 2001, constituted an act of harassment. N.J.S.A. 2C:33-4 defines harassment as follows:
Except as provided in subsection d. and e., a person commits a petty disorderly offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
This statute has been interpreted in the domestic violence context on several occasions. See Cesare v. Cesare, 154N.J. 394, 713 A.2d 390 (1998); State v. Hoffman, 149 N.J. 564, 695 A.2d 236 (1997). In order for a communication or conduct to constitute harassment and an act of domestic violence, the defendant must speak or act with the purpose to harass another, Murray v. Murray, 267 N.J.Super. 406, 408-09, 631 A.2d 984 (App.Div.1993), and the words or conduct must be of a nature to cause alarm. Hoffman, supra, 149 N.J. 564, 695 A.2d 236; D.C. v. T.H., 269 N.J.Super. 458, 635 A.2d 1002 (App.Div.1994). Thus, we have held that expressions of a lack of affection in the context of a crumbling marriage cannot be considered an act of harassment. Murray, supra, 267 N.J.Super. at 410, 631 A.2d 984. A statement by the husband that he would bury his wife, uttered after she announced her intention to obtain a divorce, does not constitute harassment. Peranio v. Peranio, 280 N.J.Super. 47, 56, 654 A.2d 495 (App.Div.1995). A statement by the father of young children to the mother of the children strongly objecting to the disciplinary measures used by the mother's boyfriend does not constitute harassment. D.C., supra, 269N.J.Super. at 462, 635 A.2d 1002. Similarly, the exchange of vulgarities on numerous occasions and inappropriate expressions of anger, including kicking the garbage can in the presence of the parties' young children, is not harassment. J.N.S. v. D.B.S., 302 N.J.Super. 525, 527-28, 695 A.2d 730 (App.Div.1997).
On its face, the complaint filed by plaintiff does not establish anything other than a dispute between divorced parents over the conduct of a child. The facts standing alone certainly do not reveal that defendant said or did anything with a purpose to harass, annoy or alarm plaintiff. Although the complaint recites that "defendant harasses plaintiff through telephone calls and by coming to her property," that statement without more does not establish a prior history of domestic violence because telephone calls are not inherently annoying or alarming. Defendant admitted to no more than a dispute; therefore, the February 8, 2001 final restraining order is reversed.
*885 We pause to make several other observations concerning the conduct of this hearing. We recognize that this case was probably one of many scheduled and resolved that day. The volume of the calendar and the need to resolve each matter as efficiently as possible should not override the serious consequences associated with the entry of a domestic violence restraining order. A defendant who violates an order issued pursuant to the Act may be charged with contempt pursuant to N.J.S.A. 2C:29-9b, a crime of the fourth degree. A second conviction requires a minimum jail term of not less than thirty days. N.J.S.A. 2C:25-30. Furthermore, familial relationships may be fundamentally altered when a restraining order is in effect.
Here, the transcript provided to this court reveals that neither party was ever sworn. Given the consequences of an order entered under the Act, the parties should be sworn before any action is taken on the complaint, particularly when either one or both of the parties appears pro se.
Furthermore, although the Act and Rule 5:7A allow entry of a final domestic violence restraining order "on a stipulation by a defendant to the commission of an act or acts of domestic violence," it is good practice to have the defendant provide a factual basis for the admission that an act of domestic violence has occurred. Indeed, in the commentary to Rule 5:7A, Judge Pressler states that "[t]he rule consequently does not permit entry of the final order on consent without the required factual admissions." Pressler, Current N.J. Court Rules, comment on R. 5:7A (2002).
The need for a judge to be assured that there is a factual basis for the entry of an order is not confined to criminal cases. See R. 3:29. In the civil context, a motion for summary judgment, including an unopposed motion, is not entered unless the motion judge is satisfied that the moving party is "entitled to a judgment or order as a matter of law." R. 4:46-2(c). Furthermore, the rules governing civil, criminal and family practice are replete with instances in which the applicant for relief must demonstrate "good cause," or establish certain facts before relief may be granted, even when the application is unopposed or ex parte. See e.g., State v. Barboza, 115 N.J. 415, 422, 558 A.2d 1303 (1989) (a trial court must be "satisfied from the lips of the defendant that he committed the acts which constitute the crime" from which he pled guilty); State v. Leckis, 79 N.J.Super. 479, 484-85, 192 A.2d 161 (App.Div.1963) (it is reversible error for a trial court to accept a guilty plea without being assured the defendant understands the charges); Sherman v. Sherman, 330 N.J.Super. 638, 645-46, 750 A.2d 229 (Ch.Div.1999) (court denied ex parte request for injunction when undisputed facts were "so sketchy as to greatly hamper the court's understanding surrounding the circumstances and inordinately inhibit its ability to analyze the competing rights of the parties"); Carfagno v. Carfagno, 288 N.J.Super. 424, 433, 672 A.2d 751 (Ch.Div.1995) (a court may dissolve a domestic violence final restraining order only upon a showing of "good cause"); First Nat'l State Bank of N.J. v. Gray, 232 N.J.Super. 368, 372-73, 556 A.2d 1334 (Law Div.1989) (court denied plaintiff's application for a consent judgment, finding that consent judgments "are not a mere authentication or recording of the parties' agreement"). While we do not suggest that the proceeding need have all the trappings of a criminal plea, the provision of a factual basis by the defendant provides additional assurance that there is a factual predicate for the order.
*886 Finally, in this case, a close reading of the record reveals that defendant did not concede that the exchange of words between the parties constituted an act of domestic violence. When it became clear that defendant did not agree that his conduct on February 1, 2001, constituted an act of domestic violence, the hearing should have proceeded, at which the parties would have testified and the judge would have made factual findings before the entry of any order.
Reversed.