# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4204-18T3

M.T.D.,

    Plaintiff-Respondent,

v.

M.S.,

    Defendant-Appellant.

_____

          Argued February 27, 2020 – Decided May 29, 2020

          Before Judges Suter and DeAlmeida.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1593-19.

          Mark J. Molz argued the cause for appellant.

          Respondent has not filed a brief.

PER CURIAM

Defendant M.S.[1] appeals from an April 16, 2019 final restraining order (FRO) entered by the Family Part pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

The following facts are derived from the record.  M.S. and plaintiff M.T.D. were involved in a relationship that produced one child.  At the times relevant to this matter, their relationship had ended.

On April 2, 2019, M.T.D. filed a complaint seeking an FRO.  With respect to the events alleged in the complaint M.T.D. testified as follows:  on March 29, 2019, he was a passenger in a car stopped at a stop sign at the exit of a supermarket parking lot when M.S. drove past.  His car exited the parking lot into the lane of traffic behind M.S.'s car.  M.S. pulled over and waited for M.T.D.'s car to pass.  She thereafter followed his car for between eight and ten miles around a lake and back into town.  M.T.D. called 9-1-1 to report that he was being followed.  An officer pulled M.S. over in a nearby parking lot.

M.S. admitted she saw M.T.D.'s car pull into the lane behind her and then purposely pulled over to get her car positioned behind his.  She testified that she

---

[1]  We use initials to preserve the confidentiality of court records concerning domestic violence.  R. 1:38-3(d)(9).

was attempting to make sure M.T.D. did not see where she was going because she was heading to the home of their child's nanny, and a court order prohibits M.T.D. from contacting the child. She testified that she called 9-1-1 because she believed M.T.D. had an outstanding warrant for his arrest and a suspended driver's license for child support arrears. M.S. testified that the police dispatcher instructed her to follow M.T.D.'s car.

M.S. denied two additional allegations in M.T.D.'s complaint: having followed him on a prior date from Cherry Hill to his place of employment in Jackson and appearing unannounced at his place of employment. M.T.D. provided no testimony about these allegations. M.S. called her passenger as a witness.

With respect to M.S.'s history of harassing behavior, M.T.D. testified that

> the main reason I'm here is because every time I'm in town . . . , if she sees me, she follows me. . . . [S]he'll just follow me for no reason. . . . When I go out with my friends . . . going to the Wawa or Acme or something, if she sees me she will follow me . . . . [A]t first . . . I thought it was pretty funny . . . the first maybe . . . year, but now . . . I'm going to have a kid born next week . . . and her following me, it's just not right. It's not safe for me and it's not safe . . . for my newborn son.

M.T.D. elaborated on the parties' history in a colloquy with the court.

A-4204-18T3

THE COURT:     So how many times approximately in, let's say, the month of March, how many times would you say that she's followed you?

[M.T.D.]:     Twice, maybe twice.

THE COURT:     All right.  What other types of things, what other types of issues are you having with her?

[M.T.D.]:     [S]he's texted my mother numerous racial and demeaning . . . words . . . telling her . . . she's not going to stop, it doesn't matter what anybody says, she's not going to stop following me, she's going to keep doing what she's doing.  And at that point, sir, it was just . . . don't come to my house, don't follow me, don't come by my other house . . . .

            . . . .

[S]he repeatedly uses the n[---] word to me and my mom as reference to me and to my mom . . . .

M.S. admitted to using the racial slur about which M.T.D. testified but said "it's not a constant thing."  She testified that M.T.D.'s mother had signed a harassment charge against her, but the matter was resolved through a mutual non-contact agreement.

At the conclusion of testimony, the court issued an oral opinion in which it found M.T.D.'s testimony was more credible than the testimony of M.S.  After rejecting as incredible M.S.'s testimony that the police dispatcher instructed her to follow M.T.D.'s car on March 29, 2019, the court concluded M.S. harassed

4

M.T.D. by following his vehicle without cause. As the court explained, "[t]here's no reason based upon the history of the parties [M.S.] should be anywhere near [M.T.D.]" In addition, the court concluded in light of M.S.'s prior acts toward M.T.D., an FRO was necessary to prevent M.S. from continuing to harass M.T.D. Based on these conclusions, on April 16, 2019, the court entered an FRO against M.S.

This appeal followed. M.S. raises the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN FINDING A PREDICATE ACT.
>
> POINT II
>
> THERE WAS NO NEED TO ISSUE A RESTRAINING ORDER TO PROTECT [M.T.D.]

II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We should not disturb the "'factual findings and legal conclusions

of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The entry of an FRO requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The court should make this determination "'in light of the previous history of violence between the parties.'" Ibid. (quoting Cesare, 154 N.J. at 402). Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to

prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1)   The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)   The existence of immediate danger to person or property;
>
> (3)   The financial circumstances of the plaintiff and defendant;
>
> (4)   The best interest of the victim and any child;
>
> (5)   In determining custody and parenting time the protection of the victim's safety; and
>
> (6)   The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a); see also Cesare, 154 N.J. at 401.]

Here, the trial court determined that M.S. committed harassment, one of the predicate acts set forth in the Act. N.J.S.A. 2C:25-19(a)(13). A person commits harassment if, "with purpose to harass another," he or she:

> (a)   Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> (b)   Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

7

(c)    Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

For a finding of harassment under N.J.S.A. 2C:33-4, the actor must have the purpose to harass. Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) (citing D.C. v. T.H., 269 N.J. Super. 458, 461-62 (App. Div. 1994); E.K. v. G.K., 241 N.J. Super. 567, 570 (App. Div. 1990)). Finding a party had the purpose to harass must be supported by "some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). A purpose to harass may be inferred from the evidence. State v. McDougald, 120 N.J. 523, 566-67 (1990). Common sense and experience may also inform a determination or finding of purpose. State v. Hoffman, 149 N.J 564, 577 (1997) (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)).

The record contains ample support for the trial court's finding that M.S. acted with the purpose of annoying or alarming M.T.D. As the trial court aptly noted, given the parties' history, there was no legitimate reason for M.S. to follow M.T.D.'s car for eight to ten miles. Yet, she purposely pulled her own

8

car over to the side of the road to get behind M.T.D.'s car so she could follow him. The court rejected her dubious claim that the police dispatcher instructed her to follow someone she identified as having an outstanding arrest warrant.

In addition, our review of the record reveals sufficient support for the trial court's conclusion an FRO is necessary to prevent M.S. from continuing to harass M.T.D. The record contains evidence of M.S.'s ongoing harassing behavior toward M.T.D., including following him to work and using a racial slur towards him and his mother. It was reasonable for the trial court to conclude M.S. was unlikely to stop her harassing acts without an FRO. In addition, M.T.D. testified he feared for the safety of his child, further justifying the FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION