# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2560-22

A.S.G.,[1]

    Plaintiff-Respondent,

v.

D.T.G.,

    Defendant-Appellant.

_____

> Submitted January 17, 2024 – Decided January 30, 2024
>
> Before Judges Mayer and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-1250-23.
>
> Ziegler Law Group, LLC, attorneys for appellant (Vikki Stacy Ziegler and Thomas A. Grossi, on the briefs).
>
> Buchan, Palo & Cardamone, LLC, attorneys for respondent (Stephanie Palo, on the brief).

---

[1] We use initials to preserve the confidentiality of court records and the victim in a domestic violence matter. R. 1:38-3(d)(9) and (10).

PER CURIAM

Defendant D.T.G. appeals from a March 16, 2023 final restraining order (FRO) entered in favor of plaintiff A.S.G. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

We recite the facts from the two days of trial testimony on plaintiff's domestic violence complaint.

Plaintiff and defendant married in 2011 and are the biological parents of two children. At the time of the domestic violence trial, the parties had a pending divorce action. Notwithstanding the divorce action, the parties lived together in the marital home. Plaintiff's mother also lived in the home. However, plaintiff and defendant maintained separate bedrooms and rarely spoke to each other.

Plaintiff testified to a series of domestic violence incidents beginning in 2022. On May 6, 2022, plaintiff asserted defendant slammed the door on her hand during an argument. According to plaintiff, she was unable to use her hand for several months and required occupational therapy. Regarding this incident, defendant testified plaintiff "kick[ed] . . . the door" and "popped the lock" as he dressed after showering. According to defendant, plaintiff "put her hand" in the doorway as he tried to hold the door shut. Defendant claimed he did not

A-2560-22

intentionally close the door on plaintiff's hand and did not know her hand was in the door until he heard her cry out.

On May 26, 2022, plaintiff alleged defendant moved her belongings from the master bedroom into the spare bedroom and locked the master bedroom. An argument ensued and defendant "slammed the door," causing plaintiff's foot to catch in the doorway. According to defendant, plaintiff kicked the door and, when defendant opened the door, plaintiff intentionally inserted her foot into the doorway.

In December 2022, while arguing over parenting time, plaintiff alleged defendant took the children into the master bedroom and locked the door. Plaintiff claimed defendant pushed and bumped her during the argument. Defendant did not testify regarding this incident.

Additionally, plaintiff described several incidents during which she claimed defendant shoved and punched her while both were asleep. Defendant denied ever hitting plaintiff.

Plaintiff also testified regarding a January 9, 2023 incident on the staircase in the marital home.[2] According to plaintiff, as she ascended the staircase, defendant went down the staircase "and body-checked" her, causing her to

[2] Plaintiff suffers from neuropathy in her feet.

3

"slam[]" into the wall and injure her ribs. Defendant explained he was descending the stairs when plaintiff began to climb up the stairs and it was impossible to avoid physical contact on the narrow staircase. According to defendant, he was "trying to avoid [plaintiff]" when she "start[ed] to proceed up the stairs intentionally trying to make [defendant] hit her." Defendant denied body-checking plaintiff on the staircase.

Plaintiff next described an incident on January 31, 2023. According to plaintiff, while she was showering in the marital home, defendant entered the home and removed both Honeywell thermostats controlling the temperature in the house. As a result, plaintiff claimed the home had no heat. She further explained defendant returned to the home in the afternoon that same day to install a Nest thermostat. The Nest thermostat required internet access and defendant was the only person who had the passcode to gain access to the internet in the marital home. Without the passcode, plaintiff would have been unable to control the temperature in the home. Consequently, plaintiff scheduled reinstallation of a Honeywell thermostat the following day.

During his testimony regarding this incident, defendant confirmed he removed the Honeywell thermostats. By way of explanation, defendant stated he did not know plaintiff was home and believed she would be unaffected by the

4

lack of heat. Defendant did not dispute he intended to control the Nest thermostat and prevent plaintiff from adjusting the temperature in the marital home. According to defendant, plaintiff and her mother "refused to pay any bills" and constantly adjusted the temperature, resulting in higher utility costs. As of January 31, defendant no longer lived in the marital home and was not impacted by his removal of the thermostats.

In addition to these incidents, plaintiff testified:

> I am scared of this man. Everything has continuously escalated. I don't want to risk getting hit. I don't want to be threatened. I don't want my children seeing any more of this. They've witnessed multiple events. They hear constant yelling, me being cursed at. I live in fear of this man. I d[id] not sleep when he was in the house, because I didn't know . . . what tomorrow was going to bring.

Plaintiff also told the judge: "I've tried everything to be civil and let everything slide, and slide, and slide. I can't anymore. I cannot live like this."

At the conclusion of the testimony, the judge placed her reasons in support of the issuance of an FRO on the record. The judge found the January 9 and January 31, 2023 incidents constituted harassment under the PDVA.

Regarding the staircase incident on January 9, the judge stated:

> [N]ormal people . . . don't run up steps when the[ir] soon-to-be-ex-wife . . . is . . . coming down the steps slowly. You could still come up the steps and give it a

5

minute. . . . I think [defendant] went out of his way to stop on that . . . spot . . . and shove[d] [plaintiff]. I'm satisfied he did that, and I'm satisfied that that's a violation of subsection (b) of the harassment statute.

Regarding the thermostat incident on January 31, the judge found:

[Defendant] [didn't] want [plaintiff] to know what he did until he [was] out of the house. . . .

He knew what he was doing and he knew [plaintiff would] get upset. Did he say, oh, by the way I'm changing the thermostats today? No. Did he say anything? Did he text [plaintiff]? Did he tell [plaintiff's] lawyer? Did he tell his lawyer to tell [plaintiff's] lawyer? Did he . . . leave a note? Did he do anything? No.

The judge concluded defendant's removal of the thermostats was intended to "harass" plaintiff, and "[t]here was no legitimate purpose for that conduct." The judge noted "[t]here were so many ways that could have been handled better" and thus found defendant's conduct regarding the thermostat removal constituted harassment under subsection (c) of the harassment statute.

Because the parties disputed the events of January 9 and 31, 2023, the judge addressed the witnesses' credibility. The judge found plaintiff:

was emotional, consistent with what she was talking about.

She was composed, but emotions creep through and memories come out, and you see the flashes and the filling of the eyes. . . . That was very consistent with

6

the more emotional parts that demonstrated to me the truthfulness and the difficulty of living under that, and the potential of having to live under that if I did not enter the final [restraining order].

Additionally, the judge stated:

[T]he plaintiff [was] credible . . . [and] the defendant [was] credible a lot, but I find some of the answers incredible in the sense of, really, that's your answer? . . . I think [defendant] told the truth on some things. But I find[,] for the most part, both of the parties credible. I do have some problem[s] with some of the testimony of both parties, but it's enough that I am satisfied I can make a finding of fact. . . .

I'm satisfied that the plaintiff presents an appropriate credible predicate act. . . .

The judge then addressed the second prong for issuance of an FRO and found an FRO necessary to protect plaintiff from further abuse. The judge stated:

I also have to observe plaintiff and defendant to see if I think a final restraining order is necessary. . . .

I am satisfied that [plaintiff is] fearful and I'm satisfied that [plaintiff is] at a point where . . . [she is] living at the stress level every moment . . . with the idea of [defendant] . . . coming in and out of the house. . . .

I think there's a pattern here where he does exercise control over [plaintiff]. . . .

I've got[] enough of a feel for the case here that I'm satisfied the defendant is in charge, and that he's the

7

decision maker, and whether he lives there or not it's his way . . . [and] [the statute] is about coercive control.

Based on her findings, the judge entered an FRO against defendant on March 16, 2023.

On appeal, defendant contends the judge's factual findings and legal conclusions were unsupported by the record. Defendant further claims the judge erred in finding the replacement of thermostats in the marital home constituted harassment for the issuance of an FRO under the first prong of Silver.[3] In addition, defendant argues the judge erred in finding plaintiff required an FRO to prevent further abuse under the second prong of Silver. We reject defendant's arguments.

Our review of an FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). In domestic violence cases, we owe substantial deference to a Family Part judge's findings, which "are binding on appeal when supported by adequate,

---

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  This is particularly true where the evidence is testimonial and implicates credibility determinations.  Ibid. (citing In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).  "We defer to credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'"  Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).  We will not overturn a judge's factual findings and legal conclusions unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Ibid. (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

When determining whether to grant an FRO under the PDVA, a judge must undertake a two-part analysis.  Silver, 387 N.J. Super. at 125-27.  First, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred."  Id. at 125.  Second, after finding a

predicate act, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further abuse. Id. at 126-27.

Here, the judge found defendant committed the predict act of harassment, one of the delineated offenses under the PDVA. N.J.S.A. 2C:25-19(a)(13). Harassment under N.J.S.A. 2C:33-4 is committed when, with purpose to harass another, a person:

> (a) [m]akes, or cause to be made, one or more communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> (b) [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> (c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

For a harassment finding under N.J.S.A. 2C:33-4, the person must act with the purpose to harass. Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) (citing D.C. v. T.H., 269 N.J. Super. 458, 461-62 (App. Div. 1994)). Because "direct proof of intent" is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006) (citing State v.

A-2560-22

Siegler, 12 N.J. 520, 524 (1953)).  Finding a party had the purpose to harass must be supported by evidence that the party's "conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient."  J.D., 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)).  In determining whether a defendant's conduct constitutes harassment, a judge may use "[c]ommon sense and experience," and "[t]he incidents under scrutiny must be examined in light of the totality of the circumstances."  State v. Hoffman, 149 N.J. 564, 577, 585 (1997).

Here, the judge properly considered the prior incidents of domestic violence and the totality of the circumstances based on the trial evidence and the parties' testimony.  The judge found defendant purposefully committed acts constituting harassment under subsections (b) and (c) of the statute.  Under subsection (c), the judge determined defendant's deliberate and focused conduct on January 31, changing the thermostats in the martial home so plaintiff would be unable to control the temperature, constituted harassment.  Because the parties were in the midst of a divorce, the judge explained defendant could have contacted his attorney to discuss utility expenses for the marital home.  Instead, the judge noted defendant exercised self-help by "sneak[ing]" into the marital home unannounced and removing the thermostats at a time when defendant

11

believed plaintiff was not at home. The judge concluded defendant's act in removing the thermostats was done "to upset, and annoy, and alarm [plaintiff]."

The judge further found defendant's conduct on January 9 constituted harassment under subsection (b) of the statute because he purposely shoved plaintiff while she was ascending the staircase as he simultaneously tried to descend the staircase. The judge determined "[defendant] went out of his way to stop on [the staircase] . . . and shove[d] [plaintiff]."

In this matter, the judge observed the witnesses and heard their testimony. Based on the testimony and evidence adduced during the trial, the judge found plaintiff to be more credible than defendant. Having reviewed the record, including the judge's credibility findings, we are satisfied there was ample evidence in the record to support the judge's conclusion that defendant committed the predicate act of harassment.

After finding defendant's conduct constituted harassment under the PDVA, the judge then addressed whether plaintiff required an FRO to prevent further abuse under the second Silver prong. "[T]he second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126; see also, J.D., 207 N.J. at 475-76 (explaining an

FRO should be issued only after finding that relief is necessary to prevent further abuse). "[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1)-(29)[(a)](6)." Silver, 387 N.J. Super. at 127. Because some factors are inapplicable in certain circumstances, a judge need not consider all factors. See Cesare, 154 N.J. at 401-02.

Here, the judge's analysis included a review of the appropriate statutory factors. The judge found that there was a "previous history of domestic violence" perpetrated by defendant against plaintiff, pursuant to N.J.S.A. 2C:25-29(a)(1), and concluded there was a significant history of domestic violence and "coercive control" by defendant. In addition, relying on plaintiff's testimony, the judge found an FRO necessary to prevent further abuse by defendant. Plaintiff told the judge she was "scared" of defendant, "live[d] in fear of defendant," did not "want to risk getting hit," did not "want to be threatened," and did not want her "children seeing any more of this."

Having reviewed the record, we are satisfied the judge's determinations under the second Silver prong were amply supported by credible evidence in the record and plaintiff met her burden for the entry of an FRO.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14