# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5138-17T3

R.R.C.,

     Plaintiff-Respondent,

v.

P.F.,

     Defendant-Appellant.

_____

     Submitted March 26, 2019 – Decided April 5, 2019

     Before Judges Fisher and Suter.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1794-18.

     Mark J. Molz, attorney for appellant.

     Respondent has not filed a brief.

PER CURIAM

     The parties are the unmarried parents of a four-year-old child; the time they separately care for the child is delineated by court order. The events that

led to this action, commenced pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to 35, occurred while plaintiff R.R.C. ("Rona," a fictitious name), the child's mother, was in a Browns Mill park with the child. The child's father, defendant P.F. ("Philip," also a fictitious name), arrived and, according to Rona, engaged in acts of harassment, N.J.S.A. 2C:33-4, and criminal sexual contact, N.J.S.A. 2C:14-3. After hearing the testimony of both parties and an eyewitness – Rona's sister – the judge found a predicate act of harassment and a need for protection from future domestic violence, and issued a final restraining order.

Philip appeals, arguing:

> I. THE TRIAL COURT ERRED WHEN IT FAILED TO ACT IMPARTIALLY BY ASKING LEADING QUESTIONS, ADMITTING HEARSAY EVIDENCE AND GOING BEYOND THE FOUR CORNERS OF THE TEMPORARY RESTRAINING ORDER.
>
> II. THE TRIAL COURT ERRED IN FINDING THAT A PREDICATE ACT TOOK PLACE.
>
> III. THE TRIAL COURT ERRED IN FINDING THAT A [FINAL RESTRAINING ORDER] WAS REQUIRED TO PROTECT PLAINTIFF FROM IMMEDIATE DANGER.

We find insufficient merit in these arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only a few brief comments.

A-5138-17T3

We reject Philip's Points II and III by referring to our standard of review, which requires deference to a family court judge's findings of fact. J.D. v. M.D.F., 207 N.J. 458, 482 (2011); Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). The judge had the parties before him, they testified in his presence, and he assessed their credibility. The judge found from the testimony of both Rona and her sister that Philip arrived at the park and closely followed Rona around. Ultimately, without permission, Philip "grabbed [Rona's] backside" and asserted she had "nothing to grab anymore." Rona testified that while Philip treated this unwanted touching as a joke, she did not; Philip's conduct "shocked" her, made her feel "uncomfortable," and "upset" her. Despite Rona's loud response and obvious distress when he grabbed her, Philip persisted and made additional comments "about her body" that need not be repeated here. The judge found that Rona and her sister testified credibly about this incident, while he did not find credible Philip's assertion that nothing happened. The judge made very specific findings about the demeanor of the witnesses and thoroughly explained why he found that Philip was not credible. These findings are entitled to our deference. Cesare, 154 N.J. at 412; Pascale v. Pascale, 113 N.J. 20, 33 (1988). We also observe that the judge's conclusion that Philip's conduct constituted

3

harassment is well supported and warranted by his factual findings.[1]  We also defer to the judge's determination that an FRO was necessary to protect Rona from future domestic violence.  See Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006).

We lastly turn to Point I and Philip's argument that the judge was not impartial because he posed leading questions and expansively permitted testimony about issues that he claims were not relevant to this domestic violence action.  We reject this as well.

First, it bears mentioning that while, at trial, Philip was represented by counsel, Rona was not.  So, it was quite natural and permissible for the trial judge to elicit from Rona the testimony he believed necessary for a complete understanding of the events in the park and surrounding circumstances about their history and the parenting-time order; Rona is a layperson and was clearly unschooled in trial procedures.  See J.D., 207 N.J. at 478-82.  After a thorough review of the trial transcript, we are satisfied the judge's direct examination of Rona was entirely proper and that the manner and mode of Rona's presentation

---

[1] The judge rejected Rona's claim that Philip's touching of her constituted criminal sexual contact.

did not deprive the represented Philip – whose attorney posed numerous objections during Rona's direct examination – of due process.

We note in particular that Philip complains about what he asserts were leading questions posed by the judge. We find no merit in these arguments. Our evidence rules do not bar all leading questions on direct examination. The applicable evidence rule states only that leading questions on direct are impermissible but not when "necessary to develop the witness' testimony." N.J.R.E. 611(c). This is particularly relevant in domestic violence cases, because there are many times, as here, when one or both sides are unrepresented by counsel and the judge is left to elicit an unrepresented party's version of events. And because domestic violence judges are often called upon to hear and decide many such cases on a daily basis, we allow considerable leeway when the judge must conduct the examination of witnesses. Even at that, the record reveals that the judge asked very few leading questions and none in important areas that might not fall within N.J.R.E. 611(c)'s exception.

For example, although Philip complains that the following are leading questions, he is in fact incorrect:

- "Did you [and Philip] cohabitate together for a period of time?"

5

- "So tell me about the incidents alleged in the complaint. You're making allegations of harassment and criminal sexual contact and your complaint talks about some incidents occurring on April 23rd, 2018; May 7th, 2018. So why don't you just sort of take me through I guess starting with the events of April 23rd."

- "You indicated also in your complaint the defendant has a drinking problem. What are you talking about there?"

- "You have an allegation here that says defendant uses the child as control against plaintiff. What are you talking about there?"

These questions weren't leading. A leading question is that which "suggests what the answer should be or contains facts which in the circumstances can and should originate with the witness." State v. Abbott, 36 N.J. 63, 79 (1961). Some of the judge's questions were geared toward steering the witness to a particular subject matter, but the judge never suggested an answer in any of his inquiries. Our clear sense of the overall direct examination of Rona was of a judge simply seeking to elicit the evidence required to decide the case before him.[2]

---

[2] Philip also argues that the judge revealed a bias by eliciting testimony about the parenting time order, which he claims had nothing to do with the domestic violence action. Because context in such matters is always important, see, e.g., Murray v. Murray, 267 N.J. Super. 406, 410 (App. Div. 1995) (admonishing judges to be on guard because plaintiffs might improperly seek a finding of domestic violence for the purpose of "secur[ing] rulings on critical issues" in

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

related family litigation), we find no error in the admission of that testimony let alone a suggestion that the judge was anything less than fair and impartial. Indeed, we find the contention that the judge exhibited bias to be completely unwarranted and frivolous.

A-5138-17T3