# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2461-24

V.M.G.-C.,

    Plaintiff-Respondent,

v.

G.F.V.,

    Defendant-Appellant.

_____

Submitted April 29, 2026 – Decided June 16, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-2036-25.

Cohen Law NJ PC, attorney for appellant (Leonard B. Cohen, of counsel and on the brief).

Rutgers Law Associates, attorneys for respondent (Ashley D. Casselle on the brief).

PER CURIAM

Defendant G.F.V.[1] appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA).[2] Defendant contends the trial court erred in finding a predicate act of harassment. Further, defendant challenges the trial court's finding of a continuing need of protection for plaintiff requiring an FRO. Finally, defendant contends plaintiff is solely using the PDVA for her personal gain in related matrimonial and custody proceedings. Based upon our review of the record and applicable law, we affirm.

I.

Plaintiff V.M.G.-C. and defendant G.F.V. met and started dating in April 2016, and eventually were married in October 2018. Plaintiff and defendant lived together until September 2024, when she moved out of their joint home with their two children, T.C.-V. and R.C.-V., ages four and one respectively. Defendant continued to frequently see their children even after the parties separated.

---

[1] We refer to the parties using their initials to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

[2] N.J.S.A. 2C:25-17 to -35.

A-2461-24

On July 31, 2024, plaintiff alleged defendant became upset with her making an installment plan purchase without consulting him. Plaintiff alleged defendant told her to pack a bag and leave, then "pushed [her] on the bed, [and] threw [her] phone at the wall," which plaintiff testified made her feel "very unsafe about the kids staying there with how angry he was . . . ." As a result, plaintiff called the police, however she did not file charges or seek a restraining order at the time.

On January 29, 2025, defendant texted plaintiff asking her to pick up their children from school, explaining that he had been drinking. Defendant told her that he drank approximately four glasses of wine that night. After plaintiff picked up their children, defendant called her six to eight times and became progressively more agitated. When plaintiff eventually answered her phone, defendant berated plaintiff for over an hour. At 7:51 p.m., defendant texted plaintiff:

> "If you do not allow me to see my"
>
> . . . .
>
> "boys, if you don't act appropriately, you will have trouble with the police. I will bring the police to your house right now. Good luck . . . that I'm sober. I'm almost at your house. . . . You are really ready to risk it all?"

A-2461-24

When defendant arrived at plaintiff's house, plaintiff testified that she brought the children outside to say goodnight to defendant. However, once she brought the children outside, defendant grabbed T.C.-V., placed him in the front seat, and called the police telling them that plaintiff was kidnapping their children. Afterwards plaintiff ran inside to hand R.C.-V. over to her friend. Defendant left the car to try and get R.C.-V., which allowed plaintiff to attempt to get T.C.-V. out of the car and back into the house. Once defendant noticed this, he forcefully grabbed the child from plaintiff, leaving bruises on plaintiff's arm.

That same day, plaintiff obtained a temporary restraining order (TRO) against defendant. The TRO alleged defendant endangered plaintiff and their children by his actions, and that defendant was subsequently arrested and charged with harassment.[3] Two weeks later, plaintiff amended the TRO to include the July 31, 2024 incident.

Following trial, Judge Margaret M. Marley issued a FRO on March 4, 2025, accompanied by a comprehensive oral statement of reasons. The court found plaintiff credible, stating that she was "calm, cool, [and] collected." The court found that certain audio recordings corroborated plaintiff's testimony, with the recordings providing "a real vivid insight as to what had occurred and what

---

[3] N.J.S.A. 2C:33-4.

incidents took place." The court found defendant was not credible, noting his testimony "was all over the place." The court further found defendant was "[h]ighly emotional," and "[v]ery excitable."

The court stated defendant "absolutely knew what he was doing," on January 29, 2025. The trial court referenced the audio evidence regarding the July 31, 2024 incident and stated:

> The [c]ourt heard aggressive behavior. The [c]ourt heard a physical tussle between the parties on the July 31st incident. You could clearly hear something was happening between them, the muffling of the microphone, the plaintiff saying get your hands off me, don't put your hands on me. It was all indicative of something that is happening.

The court found plaintiff had established the predicate act of harassment under N.J.S.A. 2C:33-4(a). The court explained:

> [Defendant] . . . decides he's going to have these aggressive conversations with [plaintiff] on the phone.
>
> And when it doesn't come to the outcome that he's hoping for, he decides it's appropriate to go over to the house, demand to see the kids[] [and] put them in his car, which is not a visit. That's a plan to perhaps take off. And certainly, one that would alarm a mother who's dealing with two young children and a dad insisting on taking them in his car because they are his children after he has acknowledged taking alcohol.
>
> . . . .

A-2461-24

He absolutely knew what he was doing . . . . [H]is intention was to intimidate, threaten, and harass the plaintiff.

The trial court then analyzed the record using the Silver prong two factors[4], codified under N.J.S.A. 2C:25-29. The court found that defendant was a person who lost his temper quickly and easily, causing him to engage in "inappropriate behavior" that rose to the level of "threats, harassment, and even physical abuse." The court stated:

> The [c]ourt does find that there is . . . an immediate danger to person and property because . . . the only explanation that I'm getting from the defendant on his behavior is he was lost. He was lost in both of those moments. That indicates . . . a lack of the ability to control their temper.
>
> And . . . the best interest of the victim and the child has to be considered here. And . . . in both incidents, the children were on the scene and involved and were crying and reacting to the whole situation, but that was not enough to bring the defendant's behavior into check. It was irrelevant. It was ignored. And the . . . communication that was going off the rails just continued.
>
> . . . I find that this victim [fears for] her safety.

On appeal, defendant argues three points. First, the trial court erred by finding the predicate act of harassment. Second, the trial court erred by finding

---

[4] Silver v. Silver, 387 N.J. Super. 112, 125-28 (App. Div. 2006).

A-2461-24

that plaintiff satisfied the second prong of <u>Silver</u>.  Finally, defendant contends that the trial court erred by using the PDVA to unfairly gain an advantage in the companion matrimonial and custody action between the parties.

## II.

We apply a deferential standard of review when reviewing the trial court's factual findings.  <u>Balducci v. Cige</u>, 240 N.J. 574, 594-95 (2020).  We further defer to the trial court's credibility determinations as they have "a better perspective than a reviewing court in evaluating the veracity of a witness." <u>S.B.B. v. L.B.B.</u>, 476 N.J. Super. 575, 595 (App. Div. 2023) (quoting <u>C.R. v. M.T.</u>, 248 N.J. 428, 440 (2021)).

When reviewing the trial court's findings, "we will 'not disturb the factual findings and legal conclusions of the trial judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  <u>Whiteman v. Twp. Council of Berkeley Twp.</u>, 261 N.J. 106, 122 (2025) (quoting <u>Allstate Ins. Co. v. Northfield Med. Ctr., P.C.</u>, 228 N.J. 596, 619 (2017)).  This is since our review of "a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand."  <u>Balducci</u>, 240 N.J. at 595.

A-2461-24

However, we review the legal decisions of Family Part judges under the same de novo standard applied to other cases. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019).

III.

Defendant argues the trial court erroneously entered an FRO because the evidence did not support: that defendant had an intention to harass plaintiff on January 29, 2025; or that a restraining order was necessary to protect plaintiff from further abuse under Silver's second prong. We disagree, and affirm for the reasons set forth in Judge Marley's comprehensive oral statement of reasons. We add the following brief comments.

The ample record fully supports the trial court's findings on each Silver prong. We discern no reason to disturb the issuance of the FRO, because the trial court had a thorough grasp of the family dynamics and the history between the parties.

We consider defendant's argument that plaintiff is using the PDVA to improperly gain advantage in the parties' matrimonial and custody proceedings to be wholly without merit. Defendant relies upon N.B. v. T.B., 297 N.J. Super. 35 (App. Div. 1997), and Murray v. Murray, 267 N.J. Super. 406 (App. Div. 1993), to support this claim. We are unpersuaded. Unlike the courts in N.B.

A-2461-24

and <u>Murray</u>, the trial court here expressly found that defendant's intent was to harass plaintiff, and that defendant engaged upon a course of conduct with the purpose to seriously alarm plaintiff. The record fully supports the trial court's findings in this regard. Plaintiff's use of the PDVA's protections falls squarely within the statute's clear legislative purpose.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2461-24